# EXHIBIT A

# EDUCATIONAL BROADBAND SERVICE
# LONG-TERM *DE FACTO* LEASE AGREEMENT

THIS Educational Broadband Service ("**EBS**") Long-Term *De Facto* Lease Agreement (the "**Agreement**") is entered into as of the date of signature of the last party to sign this Agreement (the "**Effective Date**"), by and between Salisbury University (SU), 1101 Camden Avenue, Salisbury, MD 21801, University of Maryland –Eastern Shore (UMES), 11868 Academic Oval, 2101 J.T. Williams Building, Princess Anne, MD 21853, and Wor-Wic Community College (Wor-Wic), 32000 Campus Drive, Salisbury, MD 21804, all of which are members of the Lower Eastern Shore Shared Educational Network ("LESSEN") (each referred to as "Licensee" and collectively referred to as the "Lessors" or "Licensees"), and BLOOSURF LLC, a Delaware limited liability company with its principal offices at 1731 Broad Street, Pocomoke, Maryland 21851 ("**Lessee or "Bloosurf**") (each Licensee and Bloosurf are also sometimes individually referred to as "**Party**" and collectively as "**Parties**").

WHEREAS the Federal Communications Commission ("**FCC**") has authorized certain EBS channels to each Licensee to transmit in the Salisbury, Maryland market ("the Market"), specifically within the area bounded by a circle having a 35 mile radius and centered at 38-24-26.4 N, 075-35-55.7 W  as follows: A1 through A3 (2502-2518.5 MHz, (Lower Band Channels)) and A4 (2572-2578 MHz (Middle Band Channel)) under call sign WNC436 to Salisbury University, B1 through B3 (2518.5-2535 MHz (Lower Band Channels)) and B4 (2578-2584 MHz (Middle Band Channel)) under call sign WNC437 to University of Maryland-Eastern Shore, and C1 through C3 (2535-2551.5 MHz (Lower Band Channels)) and C4 (2584-2590 MHz (Middle Band Channel)) under call sign WNC463 to Wor-Wic Community College, which area is also bounded by the chord(s) drawn between intersection points of the circle and those of respective adjacent market, co-channel licensees (each "**Channel**" and collectively, the "**Channels**"); and

WHEREAS the Parties have agreed to enter into this Agreement for Licensees to each lease Bloosurf the capacity on the Channels which, pursuant to the rules, regulations and policies of the FCC (the "**FCC Rules**"), can be made available for commercial use, in accordance with the terms and conditions below, and subject to FCC approval;

THEN, in consideration of the promises and covenants set forth in this Agreement, and for good and valuable consideration, the sufficiency of which is acknowledged by the Parties' signatures, the Parties agree as follows:

1. **LEASE TERM AND RENEWAL**

   (a)  **Initial Term and Extension.** Subject to Subsection 1(c) and/or the earlier termination of this Agreement in accordance Section 8, the initial term will begin on the date of issuance by the FCC of a public notice announcing the grant of the last FCC Long Term Lease Application (as hereinafter defined) filed by the Parties with respect to this Agreement pursuant to Section 6 hereof for all of the Licenses ("**Commencement Date**"), and will end with respect to each License on the date that is ten (10) years after the Commencement Date (the "**Initial Term**").

   (b)  **Renewal.** Subject to Subsection 1(c) and/or the earlier termination of this Agreement in accordance with Section 11, this Agreement may renew with respect to a License for two (2) successive terms of ten (10) years each (each, a "**Renewal Term**"), provided that the final Renewal Term will conclude thirty (30) years after the Commencement Date, for a maximum Agreement duration of thirty (30) years. The Renewal Terms will occur when Licensees notify Bloosurf of each Licensee's unilateral determination to renew. It is each Licensees' intention following renegotiation to renew this Agreement to the maximum duration. The terms and conditions of this Agreement apply to each Renewal Term. The Initial Term and all Renewal Terms are collectively referred to herein as the "**Term**".

   (c)  **Renewal of Licenses and Extension of Agreement.** In the event that a License expires during the Initial Term and/or any Renewal Term, this Agreement will also expire at such time with respect to such License unless such License is renewed and FCC authorization for this Agreement with respect to such License is

extended. Licensee and Bloosurf will cooperate to timely file a renewal application for each License, in conjunction with a request for an extension of the then-applicable Initial Term or Renewal Term, to the date that is ten (10) years from the beginning of such Initial Term or Renewal Term. This Agreement will continue to apply to each License unless the FCC denies by Final Order any application for renewal of the License or extension of the Term with respect to the License. "**Final Order**" means an order issued by the FCC that is in full force and effect and as to which (i) no petition, application or appeal is pending and (ii) the time for the filing of any such petition, application or appeal has passed.

2.  **COMPENSATION**

    (a)  **Royalty Payments.** Beginning on the first anniversary of the date upon which the FCC issues a public notice announcing the grant of the FCC Long Term Lease Applications for all of the Licenses, and on the second anniversary and every three months thereafter throughout the Term, Bloosurf, will pay each Licensee a total royalty fee of ▓▓▓ of all Gross Sales from all wireless services provided nationally; and an additional ▓▓▓ of all Gross Sales from services provided by use of the capacity in excess of each Licensee's Reserved Capacity (as defined in Subsection 5(b) below) (the "**Excess Capacity**") in the Salisbury market (collectively, the "**Royalty Fee**"). During the first 24 months, payment of a scheduled Royalty Fee is conditioned upon Bloosurf's net income for the period being sufficient to cover the above mentioned Royalty Fee. After the first 24 months, the Royalty Fee will be due every three months as described above without regard to Bloosurf's net income. In determining whether there is sufficient net income available, Bloosurf agrees that the Royalty Fee will be paid before any employee or owner bonus payments, dividends, or other similar distributions are made. If a Royalty Fee payment is missed due to insufficient income, the payment will be deferred until the date of the next scheduled payment. "Gross Sales" shall be defined to include all recurring revenues received by Lessee from the provision of data or voice services to subscribers during the relevant period minus installation costs and one-time fees. In the event that Lessee or Choice Agreements with a third party entity to provide services over the Channels (e.g., a reseller), Gross Sales shall include recurring revenue derived from said Agreements. A "subscriber" for the purposes of this subparagraph shall be defined as any person, household or business buying data or voice services from Lessee utilizing any kind of fixed or mobile device. Payments shall be accompanied by statements listing the number and type of customers served and total revenues received by Bloosurf from those customers.

    (b)  **Payment Receipt Address.** Payments under this Agreement will be made to the following addresses, which may be changed by any Licensee from time to time upon notice to Bloosurf pursuant to this Agreement:

    For UMES, it should be as follows:
    University of Maryland Eastern Shore
    11868 Academic Oval
    2101 J.T. Williams Building
    Princess Anne, Maryland 21853

    Attention: Ronald Forsythe, Vice President for
    Technology & Commercialization

    For SU, it should be as follows:
    Salisbury University
    1101 Camden Avenue
    Salisbury, MD 21801

    Attention: Betty P. Crockett, Vice President of
    Administration & Finance

For Wor-Wic, it should be as follows:
Wor-Wic Community College
Maner Technology Center – 101
32000 Campus Drive
Salisbury, MD 21804

Attention: Stephen L. Capelli, Vice-President for
Academic and Student Affairs

(c). **Right to Audit.** Upon written notice to Lessee at least ten (10) business days in advance, Lessors shall have the right to inspect or audit all records and accounts covered by this Agreement. Said inspection or audit may be conducted by Lessor(s) or any other persons designated by Lessor(s). Lessor(s) agree(s) to maintain the confidentiality of all information so obtained.

3. **CAPACITY REQUIREMENTS AND USES**

(a) **Bloosurf Capacity.** Upon consent by the FCC to Bloosurf's leasing of the excess capacity on the Channels, Bloosurf will have the exclusive right to use all of the capacity on the Lower Band Channels other than each Licensee's Reserved Capacity ("**Bloosurf Capacity**").

(b) **Licensees' Reserved Capacity.** The term "**Licensee's Reserved Capacity**" shall mean the capacity on the Middle Band Channels.

(c) **Use of Capacity.** Bloosurf may use Bloosurf Capacity in any manner and for any purpose that is lawful, in analog, digital or any other format, including those that may be authorized in the future by the FCC. Bloosurf will use the Bloosurf Capacity in compliance with FCC Rules and all other laws and regulations applicable to Bloosurf's use of the Bloosurf Capacity. Licensees will use the Licensees' Reserved Capacity solely to satisfy the minimum educational use requirements for EBS channels pursuant to FCC Rules but may also at Licensees' option utilize services provided by Bloosurf on Bloosurf Capacity as well as unlicensed spectrum in the market.

(d) **Section 27.1214(e) Amendments.** Pursuant to Section 27.1214(e) of the FCC's rules, as may be amended, on the date that is fifteen (15) years after the Effective Date and every five (5) years thereafter, each Licensee will have a period of sixty (60) days to request a review of its minimum educational use requirements, at which time the Parties will negotiate in good faith an amendment to the Agreement that accommodates any *bona fide* changes in educational needs, technology and other relevant factors affecting Licensee's Reserved Capacity requirements. Notwithstanding the foregoing, the following shall apply to any such amendment: (i) with respect to Licensees and any Permitted End Users (defined below) for whom Bloosurf has provided Internet Access Equipment (as defined in Subsection 7(b) below), Bloosurf will make available any equipment, services or software upgrades that Bloosurf makes generally available to Bloosurf's retail customers subscribing to the same tier of service in the Market over BRS or EBS facilities; and (ii) Bloosurf may accommodate changes in Licensee's Reserved Capacity through any reasonable means available so as to avoid disruption to the advanced wireless services provided by Bloosurf.

4. **REQUIRED SUBSTANTIAL SERVICE OPERATION AND PROVISIONS FOR PROTECTION OF LICENSES**

(a) **Operation of Equipment on the Channels.** In addition to the foregoing, Bloosurf will construct and maintain facilities for the Channels that provide transmission capability sufficient to satisfy minimum build-out or performance requirements applicable to EBS Channels under standards prevailing at any given time under FCC Rules.

(b) **Dedicated and Shared Equipment Transferred to Licensees.** In the event this Agreement expires or is terminated for any reason as to any Licensee(s), other than a default by Licensee, and subject to any obligations imposed by the Rural Utility Service, Bloosurf within thirty (30) days of such expiration

or termination must transfer to Licensees ownership of that portion of the transmission equipment (not including any tower rights) then in operation that is dedicated solely to transmission of Licensee's Reserved Capacity on the Channels (the "**Dedicated Equipment**"), as well as any equipment owned by Bloosurf and used in connection with the transmission of Licensee's Reserved Capacity on the Channels that is not Dedicated Equipment, or comparable equipment (not including any tower rights) (the "**Shared Equipment**").

5. **BLOOSURF COMMITMENTS IN EXCHANGE FOR UTILIZATION OF SPECTRUM.**

In addition to Royalty Payments to be made in accordance with Section 2(a) above, Bloosurf agrees that it will undertake the following:

(a) **University/College Discounts.** Current pricing for Lessee's students, faculty and staff is approximately a 30% discount from standard pricing and might include a blended rate for mobile and fixed services for commuter students; however, students, faculty and staff may have to pay for consumer premises equipment up-front or as part of their monthly payment.

(b) **Other Matters.** Bloosurf shall negotiate with Licensees at an appropriate time other matters to include but not limited to Bulk Purchase, Campus WiMax coverage, use of radio towers controlled by the Licensees and possible collocation of network routing equipment. Any or all of these matters shall be the subject of appropriate amendments to this Agreement or to separate agreements as may be required by State of Maryland law, University System of Maryland policy, the Wor-Wic Community College Board of Trustees, and /or Maryland Board of Public Works policy.

6. **APPLICATIONS AND FEES**

(a) **FCC Long Term Lease Application.** The Parties agree to cooperate as required to prepare and file with the FCC all forms and related exhibits, certifications and other documents necessary to obtain, with respect to each License, the FCC's consent to this Agreement and satisfy the FCC's requirements for long term *de facto* lease approval as set forth in 47 C.F.R. § 1.9030(e) ("**FCC Long Term Lease Applications**"). The parties each covenant and agree that they will fully cooperate with the others as applicable, and do all things reasonably necessary to timely submit, prosecute and defend FCC Long Term Lease Applications, including responding to any petitions for reconsideration or FCC reconsiderations of grants of the FCC Long Term Lease Applications, and will promptly file or provide the other Party with all other information which is required to be provided to the FCC in furtherance of the transactions contemplated by this Agreement. The Parties further covenant and agree to include in any renewal application for the Licenses, or separately request, as necessary, a request to extend and renew this Agreement for the renewal term of the Licenses, if this Agreement contemplates renewal of this Agreement for or during any part of the renewal term for such Licenses.

(b) **Application Costs.** Bloosurf will, at its own expense, prepare all applications, notices, certificates, exhibits, consent agreements, approvals or authorizations that Bloosurf submits to the FCC or seeks to have any Licensee submit to the FCC pursuant to the Agreement. In addition, Bloosurf will pay any FCC filing fees associated with seeking FCC approval of the FCC Long Term Lease Applications and will promptly pay or reimburse Licensee for its reasonable out-of-pocket expenses in connection with the activities undertaken by Licensee in response to any request by Bloosurf under this Agreement. Bloosurf will also reimburse Licensee for Licensee's reasonable, documented out-of-pocket legal and engineering expenses incurred after execution of this Agreement in connection with obtaining, renewing and continuing in full force and effect the Licenses, otherwise complying with FCC regulatory obligations relating to the Licenses, and providing assistance to Bloosurf in licensing and other matters as Bloosurf may request from time to time during the Term.

(c) **Regulatory Fees.** Bloosurf will pay any federal regulatory fees associated with the License upon receipt of notice from the FCC that such fees are due, or upon receipt of at least thirty (30) days advance written notice from Licensee that such fees are due in the event that notice is sent to Licensee.

## 7. TRANSFERS OR ASSIGNMENTS

Subject to Subsections 11(f) and (g), neither Bloosurf nor any Licensee may assign or transfer its rights and/or obligations under this Agreement without the prior written consent of the other Party, such consent not to be unreasonably withheld, conditioned or delayed.

## 8. TERMINATION OF AGREEMENT

**(a)** This Agreement will automatically terminate with respect to a License or affected Channel(s) upon the earlier of: (i) an FCC Final Order denying any application for approval of this Agreement with respect to such License including any extensions of the term thereof; (ii) the loss or expiration without renewal of such License; (iii) an FCC Final Order revoking, terminating or canceling such License; or (iv) Bloosurf's acquisition of such License or some of the Channels pursuant to an agreement between Bloosurf and Licensee.

**(b)** This Agreement may be terminated by Licensees in the event Bloosurf fails to build a suitable network to satisfy the funding obligations of the Rural Utility Service.

**(c)** This Agreement may be terminated as to any License by any Licensee or by Bloosurf upon material breach of Bloosurf or any Licensee, including but not limited to, the payment of any monetary amounts due to any Licensee, provided that the breaching Party shall be provided with written notice by the non-breaching Party of the alleged grounds for the breach and allowed a thirty (30) day period for cure following such notice; provided, however that if the defaulting Party proceeds with reasonable diligence during such thirty (30) day period and is unable, because of circumstances beyond its control or because of the nature of the default, to cure the default within such applicable time period, the time for cure shall be extended, but in no event beyond one hundred eighty (180) days after receipt of written notice from the non-defaulting Party.

**(d)** Any Licensee may terminate this Agreement pursuant to Section 11(b).

**(e)** Bloosurf may terminate this Agreement if a FCC Final Order approving any application for approval of this Agreement has not occurred within twelve (12) months following the Commencement Date.

**(f)** The Parties will notify the FCC of the termination of this Agreement with respect to any of the Licenses or any of the Channels within ten (10) calendar days following the termination.

**(g)** Except as expressly set forth in this Agreement, upon the expiration or termination of this Agreement, each Party will pay its own fees and expenses related to this Agreement and the transactions contemplated herein, and the Parties will have no further liability to each other except by reason of any breach of this Agreement occurring prior to the date of expiration or termination. Any termination or expiration of this Agreement, regardless of cause, will not release either Licensee or Bloosurf from any liability arising from any breach or violation by that Party of the terms of this Agreement prior to the expiration or termination. The general and procedural provisions of this Agreement, which may be relevant to enforcing the obligations or duties of the Parties, as well as any other provisions that by their terms obligate either Party following expiration or termination, will survive the expiration or termination of this Agreement until the obligations or duties are performed or discharged in full.

## 9. CHANGES IN AGREEMENT

Each Party will pay its own expenses incident to any amendments or modifications to the Agreement, including, but not limited to, all fees and expenses of their respective legal counsel and any engineering and accounting expenses.

## 10. ASSUMPTION OF LIABILITIES

No Party is assuming or will be responsible for any of the other's liabilities or obligations (including but not limited to customer obligations) except as required by the FCC and this Agreement.

## 11. FCC-MANDATED LEASING ARRANGEMENT OBLIGATIONS

**(a)** The Parties are familiar with the FCC Rules affecting spectrum leasing and the provision of EBS, the Communications Act of 1934, as amended ("**Communications Act**"), the Code of Federal Regulations, and all other applicable FCC Rules, and agree to comply with all such laws and regulations.

**(b)** Bloosurf assumes primary responsibility for complying with the Communications Act, and any FCC Rules that apply to the Channels and License, and the Agreement may be revoked, cancelled or terminated, in accordance with Section 8, by Licensee or by the FCC if Bloosurf fails to comply with applicable laws and regulations.

**(c)** Neither Licensee nor Bloosurf will represent itself as the legal representative of the other before the FCC or any party, but will cooperate with each other with respect to FCC matters concerning the Licenses and the Channels.

**(d)** If a License is revoked, cancelled, terminated or otherwise ceases to be in effect, Bloosurf has no continuing authority or right to use the leased spectrum associated with such License unless otherwise authorized by the FCC.

**(e)** The Agreement is not an assignment, sale or transfer of any of the Licenses themselves.

**(f)** The Agreement will not be assigned to any entity that is ineligible or unqualified to enter into a spectrum leasing arrangement under the FCC Rules.

**(g)** Licensee will not consent to an assignment of a spectrum leasing arrangement unless such assignment complies with applicable FCC Rules.

**(h)** Licensee and Bloosurf must each retain a copy of the Agreement and make it available upon request by the FCC.

## 12. MUTUAL REPRESENTATIONS AND WARRANTIES

In addition to any other representations and warranties contained in this Agreement, each Party represents and warrants to the other that: (a) it has the full right and authority to enter into, execute, deliver, and perform its obligations under this Agreement; (b) it has taken all requisite corporate action to approve the execution, delivery and performance of this Agreement; (c) this Agreement constitutes a legal, valid and binding obligation enforceable against such Party in accordance with its terms; and (d) its execution of and performance under this Agreement will not violate any applicable existing regulations, rules, statutes or court orders of any local, state or federal government agency, court or body, or any of its existing Agreement obligations.

Further, each Licensee represents and warrants to Bloosurf that: (i) all of its Licenses are in full force and effect, (ii) Licensee's operations and activities pursuant to each of the Licenses are being conducted in material compliance with all FCC Rules, (iii) no person other than Licensee has any right, title or interest in or claims to any of the Licenses, and (iv) there is no proceeding now pending or to the knowledge of Licensee, threatened against the Licensee before any local, state or federal regulatory body with respect to the License, or any acts or omissions by Licensee or its agents, as of the Effective Date, that could have a material, adverse effect on Licensee's authorization.

## 13. INDEMNIFICATION

(a) Bloosurf will defend, indemnify and hold each Licensee harmless from and against any and all liabilities, losses, damages and costs, including reasonable attorney's fees, resulting from, arising out of, or in any way connected with any breach by Bloosurf of any warranty, representation, agreement or obligation contained herein. Bloosurf's obligations under this Section will survive the expiration or termination of this Agreement.

## 14. MISCELLANEOUS

(a) **Cooperation.** The Parties will take such further action and execute such further assurances, documents and certificates as either Party may reasonably request to effectuate the purposes of this Agreement.

(b) **Notices.** Any notice required to be given by one Party to the other under this Agreement will be delivered using a reliable national express overnight delivery service and will be effective upon receipt. All notices will be delivered to each Licensee and Bloosurf at the mailing addresses specified at the end of this Agreement. Any Party may change its addresses for receipt of notice or payment by giving notice of such change to the other Party as provided in this Section.

(c) **Force Majeure.** No Party will be liable for any nonperformance under this Agreement due to causes beyond its reasonable control that could not have been reasonably anticipated by the non-performing Party and that cannot be reasonably avoided or overcome; provided that the non-performing Party gives the other Party prompt written notice of such cause, and in any event, within fifteen (15) calendar days of its discovery.

(d) **Independent Parties.** None of the provisions of this Agreement will be deemed to constitute a partnership, joint venture, or any other such relationship between the Parties, and neither Party will have any authority to bind the other in any manner. No Party will have or hold itself out as having any right, authority or agency to act on behalf of the other Party in any capacity or in any manner, except as may be specifically authorized in this Agreement.

(e) **Applicable Law and Venue. The laws of Maryland shall govern the interpretation and enforcement of this Agreement.** The validity, construction and performance of this Agreement will be governed by and construed in accordance with the laws of the State of Maryland and any actions shall be brought within an appropriate venue within Maryland.

(f) **Non-Hiring of Employees.** No employee of the State of Maryland or any unit thereof, whose duties as such employee include matters relating to or affecting the subject matter of this Agreement, shall, while so employed, become or be an employee of the party or parties hereby contracting with the State of Maryland or any unit thereof.

(g) **Nondiscrimination in Employment**. Bloosurf agrees: (a) not to discriminate in any manner against an employee or applicant for employment because of race, color, religion, creed, age, sex, marital status, national origin, ancestry, or physical or mental handicap unrelated in nature and extent so as reasonably to preclude the performance of such employment; (b) to include a provision similar to that contained in subsection (a), above, in any subAgreement except a subAgreement for standard commercial supplies or raw materials; and (c) to post and to cause subAgreementors to post in conspicuous places available to employees and applicants for employment, notices setting forth the substance of this clause.

(h) <u>**Contingent Fee Prohibition.**</u> Bloosurf warrants that it has not employed or retained any person, partnership, corporation, or other entity, other than a bona fide employee or agent working for Bloosurf to solicit or secure this agreement, and that it, has not paid or agreed to pay any person, partnership, corporation, or other entity, other than a bona fide employee or agent, any fee or any other consideration contingent on the making of this agreement.

**(i)** **Multi-Year Agreements Contingent Upon Appropriations.** If the General Assembly fails to appropriate funds or if funds are not otherwise made available for continued performance for any fiscal period of this Agreement succeeding the first fiscal period, this Agreement shall be canceled automatically as of the beginning of the fiscal year for which funds were not appropriated or otherwise made available; provided, however, that this will not affect either the College's/Universitys' rights or Bloosurf's rights under any termination clause in this Agreement. The effect of termination of the Agreement hereunder will be to discharge both Bloosurf and the College/University from future performance of the Agreement, but not from their rights and obligations existing at the time of termination. Bloosurf shall be reimbursed for the reasonable value of any non-recurring costs incurred but not amortized in the price of the Agreement. The College/University shall notify Bloosurf as soon as it has knowledge that funds may not be available for the continuation of this Agreement for each succeeding fiscal period beyond the first.

**(j)** **Termination for Convenience.** The performance of work under this Agreement may be terminated by the Licensees in accordance with this clause in whole, or from time to time in part, whenever the Licensees shall determine that such termination is in the best interest of the Licensees. Bloosurf shall not be reimbursed for any anticipatory profits that have not been earned up to the date of termination. Termination hereunder, including the determination of the rights and obligations of the parties, shall be governed by the provisions of the University System of Maryland Procurement Policies and Procedures.

**(k)** **Financial Disclosure.** Bloosurf shall comply with the provisions of Section 13-221 of the State Finance and Procurement Article of the Annotated Code of Maryland, which requires that every business that enters into Agreements, leases, or other agreements with the State of Maryland or its agencies during a calendar year under which the business is to receive in the aggregate $100,000 or more, shall, within 30 days of the time when the aggregate value of these Agreements, leases or other agreements reaches $100,000, file with the Secretary of State of Maryland certain specified information to include disclosure of beneficial ownership of the business.

**(l)** **Political Contribution Disclosure.** Bloosurf shall comply with Article 33, Sections 30-1 through 30-4 of the Annotated Code of Maryland, which requires that every person that enters into Agreements, leases, or other agreements with the State, a county, or an incorporated municipality, or their agencies, during a calendar year in which the person receives in the aggregate $100,000 or more, shall file with the State Administrative Board of Election Laws a statement disclosing contributions in excess of $500 made during the reporting period to a candidate for elective office in any primary or general election. The statement shall be filed with the State Administrative Board of Election Laws: a. before a purchase or execution of a lease or Agreement by the University, a county, an incorporated municipality, or their agencies, and shall cover the preceding two calendar years; and b. if the contribution is made after the execution of a lease or Agreement, then twice a year, throughout the Agreement term, on ( 1 ) February 5, to cover the 6-month period ending January 31; and (2) August 5, to cover the 6-month period ending July 31.

**(m)** **Retention of Records.** Bloosurf shall retain and maintain all records and documents relating to this Agreement for three years after termination of this Agreement or any applicable statute of limitations, whichever is longer, and shall make them available for inspection and audit by authorized representatives of the University System of Maryland, including the procurement officer or designee, at all reasonable times.

**(n)** **Compliance with Laws.** Bloosurf hereby represents and warrants that: a. It is qualified to do business in the State of Maryland and that it will take such action as, from time to time hereafter, may be necessary to remain so qualified; b. It is not in arrears with respect to the payment of any moneys due and owing the State of Maryland, or any department or unit thereof, including but not limited to the payment of taxes and employee benefits, and that it shall not become so in arrears during the term of this Agreement; c. It shall comply with all federal, State, and local laws, regulations, and ordinances applicable to its activities and obligations under this Agreement; and d. It shall obtain, at its expense, all licenses, permits, insurance, and governmental approvals, if any, necessary to the performance of its obligations under this Agreement. Insurance shall be secured **to cover** $1,000,000 each occurrence/$2,000,000 in aggregate, and Licensees will be listed on such insurance as covered parties. If other insurance should later become required or necessary, the parties will negotiate it at that time.

**(o)** **Contract Affidavit.** Attachment "A" hereto is a Contract Affidavit required by the laws of Maryland and is hereby incorporated into this Agreement.

(p) **Severability.** If any provision of this Agreement is found to be illegal, invalid or unenforceable, such provision will be enforced to the maximum extent permissible so as to effect the intent of the Parties, and the validity, legality and enforceability of the remaining provisions will not in any way be affected or impaired, unless continued enforcement of the provisions frustrates the intent of the Parties.

(q) **No Waiver.** No delay or failure by any Party in exercising any right under this Agreement, and no partial or single exercise of that right, will constitute a waiver of that or any other right. Failure to enforce any right under this Agreement will not be deemed a waiver of future enforcement of that or any other right.

(r) **Counterparts.** This Agreement may be executed in one or more counterparts, each of which will be deemed an original, but which collectively will constitute one and the same instrument. Original signatures transmitted by facsimile will be effective to create such counterparts.

(s) **Headings.** The headings and captions used in this Agreement are for convenience only and are not to be considered in construing or interpreting this Agreement.

(t) **Construction.** The Parties and their respective counsel have negotiated this Agreement. This Agreement will be interpreted in accordance with its terms and without any strict construction in favor of or against either Party based on draftsmanship of the Agreement or otherwise.

(u) **Complete Agreement.** This Agreement constitutes the entire agreement between the Parties with respect to the subject matter addressed, and supersedes and replaces all prior or contemporaneous understandings or agreements, written or oral, between the Parties or any of their affiliates regarding this subject matter. No amendment to or modification of this Agreement will be binding unless in writing and signed by a duly authorized representative of each of the Parties.

[Signature Page to Follow]

IN WITNESS WHEREOF, the Parties have duly executed this Agreement as of the Effective Date.

AGREED TO:

**SALISBURY UNIVERSITY**

By: *Betty P. Crockett*
Name: Betty P. Crockett
Title: VP - Admin. & Finance
Date: 1-4-11

**UNIVERSITY OF MARYLAND EASTERN SHORE**

By: *Thelma B. Thompson*
Name: Thelma B. Thompson
Title: President
Date: 1-4-11

**WOR-WIC COMMUNITY COLLEGE**

By: *[signature]*
Name: Murray K. Hoy
Title: President
Date: 1-4-11

**BLOOSURF, LLC**

By: *[signature]*
Name: V. SABATHIER
Title: CEO
Date: 12.17.2010

Notice Address for Bloosurf:

Bloosurf LLC
1731 Broad Street,
Pocomoke, Maryland 21851
Attn: Vincent Sabathier
Fax:

Notice address for Licensees:

University of Maryland Eastern Shore
11868 Academic Oval
Princess Anne, MD 21853
Attn: Dr. Ronnie Holden
Fax: 410-651-6105

Approved for form and legal sufficiency as of January 5, 2011

*Susan G. Griisser*
Susan A. Griisser   Assistant Attorney General / ~~University~~ of Maryland Eastern Shore

*Joy K. Gaslevic* 1/6/10
Joy K. Gaslevic   Assistant Attorney General / Salisbury University

**ATTACHMENT A**

**CONTRACT AFFIDAVIT**

A.  AUTHORIZED REPRESENTATIVE

   I HEREBY AFFIRM THAT:

   I am the [title] __CEO__ and the duly authorized representative of [name of Contractor] __Blooturf LLC__ (the "Contractor") and that I possess the legal authority to make this Affidavit on behalf of myself and the Contractor for which I am acting.

B.  CERTIFICATION OF CORPORATION REGISTRATION AND TAX PAYMENT

   I FURTHER AFFIRM THAT:

   1.   The business named above is a (domestic ___) (foreign ___) corporation registered in accordance with the Corporations and Associations Article, Annotated Code of Maryland, and that it is in good standing and has filed all of its annual reports together with filing fees, with the Maryland State Department of Assessments and Taxation, and that the name and address of its resident agent filed with the State Department of Assessments and Taxation is:

   Name: __Business Filings International Inc__
   Address: __300 E Lombard St, Suite 1400, Baltimore 21202__

   2.   Except as validly contested, the business has paid, or has arranged for payment of, all taxes due the State of Maryland and has filed all required returns and reports with the Comptroller of the Treasury, the State Department of Assessments and Taxation, and the Department of Labor, Licensing and Regulation, as applicable, and will have paid all withholding taxes due the State of Maryland prior to final settlement.

   I DO SOLEMNLY DECLARE AND AFFIRM UNDER THE PENALTIES OF PERJURY THAT THE CONTENTS OF THIS AFFIDAVIT ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE, INFORMATION, AND BELIEF.

Date: __12.17.2020__   By: __V. SABATHIER__
                            (Authorized Representative and Affiant)

                            __CEO__
                            (Printed or Typed Name and Title)