# EXHIBIT I

CONFIDENTIAL

# ASSET PURCHASE AGREEMENT

THIS ASSET PURCHASE AGREEMENT (this "**Agreement**") is made as of

1/25/2022 | 12:29 PM PST
_____, 2021 ("**Effective Date**") by and among TDI Acquisition Sub, LLC, a Delaware limited liability corporation (the "**Buyer**"), and University of Maryland Eastern Shore, Salisbury University and Wor-Wic Community College, each on its behalf and on behalf of its Affiliates (each, a "**Seller**", and collectively the "**Sellers**").  Buyer and Sellers may be referred to herein collectively as the "**Parties**" and individually, as a "**Party**".

## RECITALS

A.      Sellers are the licensees of a certain Educational Broadband Service ("**EBS**") licenses as listed on Schedule 1 (each, a "**License**", and collectively the "**Licenses**") issued by the Federal Communications Commission (the "**FCC**").

B.      Sellers and Bloosurf LLC ("**Bloosurf**") are parties to that certain Educational Broadband Service Long-Term De Facto Lease Agreement dated as of January 4, 2011 ("**Bloosurf Lease**") pursuant to which Sellers are leasing capacity on the Licenses to Bloosurf.

C.      On July 10, 2019 the FCC adopted a *Report and Order* in its WT Docket No. 18-120 ("**July 2019 R&O**") which made material changes to the FCC's rules, regulations and policies governing EBS (such rules, regulations and policies, along with all other statutes, rules, regulations and policies applicable to the Channels, the Licenses or this Agreement (the "**FCC Rules**"), expanding the entities eligible to hold EBS licenses to include Buyer.

D.      The changes to the FCC Rules adopted by the July 2019 R&O applicable to the transaction contemplated by this Agreement became effective on April 27, 2020;

E.      Pursuant to the terms of this Agreement, the Sellers desire to assign and transfer the Licenses to Buyer and Buyer desires to take assignment and assume the obligations under the Licenses from the Sellers. All other assets of the Sellers will be excluded for purposes of this Agreement.

F.      Buyer and Sellers desire to enter into this Agreement to effect the assignment and transfer of the Licenses to Buyer free and clear of all liens, claims, mortgages, pledges, security interests, encumbrances, adverse claims or restrictions whatsoever (collectively, and excluding the Bloosurf Lease, "**Liens**").

## AGREEMENTS

1. **Assignment and Transfer of Licenses**:  Upon the terms and subject to the conditions outlined in this Agreement, on the Closing Date (as defined below) and the consent to assignment of the licenses by Bloosurf, including the consent by Bloosurf to the Bloosurf Lease termination date ("Bloosurf Consent"), Sellers will assign, and transfer to Buyer, and Buyer will take assignment and transfer from Sellers, of all of Sellers' rights and interests in and to the Licenses,

free and clear of all Liens, in consideration of the payment by Buyer to Sellers of the Consideration (as defined below).  The Parties agree to cooperate in good faith to prepare and file the FCC assignment applications for the Licenses (the "**Assignment Applications**") within fifteen (15) business days from the Effective Date and receipt of Attachments A-C completed by Sellers; provided, however, that the failure to submit the Assignment Applications within this timeframe shall not be deemed a breach of this Agreement.

2. **Payment of Consideration**:  The total consideration paid for the Licenses will be ███ █████████████████ (the "**Consideration**") ██████████ according to Schedule I.  The Consideration shall be payable by Buyer to a Seller within five (5) business days of the Closing Date (as defined below) by wire transfer of immediately available funds to the account designated in Attachment B.

3. **Assumption of Liabilities**: At Closing, Buyer will be subject to the Bloosurf Lease and will be entitled to all compensation and other benefits thereunder, and shall assume the obligations of Sellers thereunder. Buyer is not assuming and will not be responsible for any liabilities or obligations of the Sellers other than the Bloosurf Lease. Notwithstanding the foregoing, Buyer will not be responsible for any liabilities or obligations of Seller arising under the Bloosurf Lease prior to Closing. .

4. **Payment of Expenses**:  Buyer and Sellers will each bear their own legal, accounting and brokerage expenses in connection with this Agreement.  Sellers will pay all applicable sales and transfer taxes customarily paid by a Seller, if any, and Buyer will pay all applicable sales and transfer taxes customarily paid by a Buyer, if any.  Buyer will pay all FCC fees in connection with the Assignment Applications.

5. **Reserved**.

6. **Closing**:

(a) Closing Date: The closing ("**Closing**") for the assignment and transfer of the Licenses will occur within ten (10) business days after the Final Order (as defined below) to the assignment of the Licenses to Buyer and the satisfaction of all other conditions specified in this Agreement (the "**Closing Date**").

(b) Cooperation:  Buyer and the Sellers will cooperate in good faith and exercise their reasonable best efforts to obtain FCC and Bloosurf Consent to the assignment of the Licenses to Buyer, and finalize and execute the documents required for Closing on Attachment D and any and all other documents or agreements required by the FCC to effect the assignment and transfer of the Licenses on or prior to the Closing Date.   Buyer shall file proper and timely notice of consummation to the FCC of the assignment and transfer of the Licenses following the Closing Date.

(c) Definitions: As used in this Agreement, "**Final Order**" will mean that forty (40) days have elapsed from the date of the FCC's issuance of Public Notice of consent ("**FCC Consent**") without any filing of any adverse request, petition or appeal by any Party or third party or by the FCC on its own motion with respect the Assignment Applications, or any resubmission of any

application, or, if challenged, the FCC Consent will have been reaffirmed or upheld and the applicable period for seeking further administrative or judicial review will have expired without the filing of any action, petition or request for further review.

7. **Closing Conditions**:

(a) <u>Sellers' Closing Conditions</u>.  The Sellers' obligations to close shall be subject to the satisfaction of all of the following conditions (except to the extent any such conditions are expressly waived in writing): (i) receipt of FCC Consent, by Final Order, of the assignment of the Licenses to Buyer;  (ii) receipt of the Bloosurf  Consent and any required third party approvals required for the assignment of the Licenses to Buyer; (iii) the continued truth and accuracy of Buyer's representations and warranties provided herein; (iv) execution and delivery of appropriate instruments of sale and assignment and such other documents and instruments as the Parties or their counsel may reasonably request; and (v) payment by Buyer of the Consideration on the Closing Date. Sellers' Closing Conditions will survive this Agreement for a period of one (1) year.

(b) <u>Buyer's Closing Conditions</u>. Buyer's obligation to close shall be subject to the satisfaction of all of the following conditions (except to the extent any such conditions are expressly waived in writing): (i) receipt of FCC Consent, by Final Order, of the assignment of the Licenses to Buyer; (ii) receipt of the Bloosurf Consent and any other required third party consents and approvals required for the transfer of the Licenses; (iii) Bloosurf's consent to the Bloosurf Lease end date as outlined in the Bloosurf Consent (iv) the continued truth and accuracy of each Seller's representations and warranties provided herein; and (v) execution and delivery of appropriate instruments of sale and assignment and such other documents and instruments as the Parties or their counsel may reasonably request.  Buyer's Closing Conditions will survive this Agreement for a period of one (1) year.

8. **Representations and Warranties**:

(a) <u>Sellers' Representations and Warranties</u>: Each Seller represents and warrants to Buyer as follows:  (i)  Each Seller is the lawful and exclusive holder of a License and has the unrestricted right to assign and transfer its License to Buyer at Closing free and clear of Liens; (ii) this Agreement has been duly authorized and approved by all required action of each Seller; (iii) subject to the consent of Bloosurf to the assignment of the Licenses to Buyer, neither the execution nor the delivery of this Agreement nor the consummation of the transaction contemplated by it will conflict with, or result in any violation or default under, any term of the organizational documents of Sellers, or any agreement, mortgage, indenture, license, permit, lease or other instrument, judgment, decree, order, law or regulation by which Sellers are bound; (iv) there is no pending or threatened action, petition, pleading or competing application by the FCC, or any other governmental agency or third party to  suspend, revoke, terminate or challenge the Licenses, Seller's qualifications as licensee, or otherwise investigate the operation pursuant to the Licenses; (vii) to the best of Seller's knowledge, no person or entity holds or has been granted a right of first refusal or option to purchase the Licenses other than as stated in this Agreement; and (viii) to Seller's knowledge, all written information provided by Seller to Buyer concerning the Licenses is true and complete.  Each of Seller's representations and warranties will survive the Closing for one (1) year.

CONFIDENTIAL

(b) Buyer's Representations and Warranties:  Buyer represents and warrants to each Seller as follows:  (i) Buyer is duly incorporated and in good standing under the laws of the state of its incorporation; (ii) this Agreement has been duly authorized and approved by all required corporate action of Buyer; (iii) Buyer is financially and legally able to meet its obligations under this Agreement; and (iv) neither the execution nor the delivery of this Agreement nor the consummation of the transaction it contemplates will conflict with, or result in, any material violation or default under any term of the articles of incorporation or by-laws of Buyer, or any agreement, mortgage, indenture, license, permit, lease or other instrument, judgment, decree, order, law or regulation by which Buyer is bound.  Each of Buyer's representations and warranties will survive the Closing for one (1) year.

9.  **Sellers' Covenants**:  From the date of this Agreement to the Closing Date, each Seller will:  (i) not, except as may be permitted by Section 19 sell, dispose, encumber or permit the assignment and transfer, disposal or encumbrance of its License; (ii) cooperate with Buyer, at no cost to Seller, in taking all necessary actions to maintain the continued validity of its License; (iii) afford Buyer and its representatives reasonable access to Seller's records relating to the License during normal business hours; (iv) not seek to modify or allow modification of any of the parameters under the License; and (v) cooperate with Buyer in all applications or filings with the FCC in connection with this transaction. From and after the Closing Date, Sellers will at any time and from time to time, upon Buyer's request and without further cost to Buyer, prepare, execute and deliver instruments of conveyance and assignment and will take action as Buyer may reasonably request to more effectively transfer to and vest in Buyer, or its successors and assigns, and to put Buyer in possession of the Licenses, free and clear of any and all Liens.

10.  **Conflicting Agreements**:  (a) Sellers are not a party to, nor is a License subject to, any contract or arrangement that would preclude or would be violated by Sellers' performance of Sellers' obligations under this Agreement or by the consummation of the transactions contemplated by the Agreement; and (b) each Seller covenants that it will not enter into, nor cause its License to be or become subject to, any contract or arrangement, and that, if any person should allege that any contract or arrangement exists or otherwise seeks to challenge consummation of the transactions (or any portion of the transactions) contemplated by this Agreement then Seller will promptly use its commercially reasonable efforts to resolve the allegations or challenges so as to permit the transactions contemplated by this Agreement to be consummated as soon as is practicable, and Sellers acknowledges that, until all allegations and challenges have been finally and favorably so resolved, Buyer will not be obligated to close the transactions contemplated.

11.  **Confidentiality**:  Subject to the Public Information Act (as defined below), the terms of this Agreement and any information about Buyer's or Sellers' business will be kept strictly confidential by the Parties and their agents, which confidentiality will survive the Closing or termination of this Agreement for a period of three (3) years.  The Parties may make disclosures solely to the extent required by law or any governmental entity of competent jurisdiction, to enforce this Agreement, and to employees, shareholders, agents, attorneys and accountants (collectively, "**Agents**") as required to perform obligations under this Agreement, provided, however, that the Parties will cause all Agents to honor the provisions of this section.

**Public Information Act.**   The disclosure of records in the custody of the Sellers is governed by the provisions of Title 4 of the General Provisions Article of the Annotated Code of Maryland (the "**Public Information Act**").  The Public Information Act requires Maryland State entities to grant public access to information about the affairs of government and the official acts of public officials and employees, subject to certain exceptions.  (The Public Information Act does not require disclosure of unrecorded recollections of employees of events or conversations.)

*Section 4-335 of the Public Information Act requires that a State agency deny inspection of the part of the public record that contains information concerning trade secrets, confidential commercial information, or confidential financial information.*  The determination whether the information constitutes a trade secret, or confidential commercial or financial information, is generally left to the judgment of the business enterprise about which the information relates.

*Accordingly, the employees of the Sellers shall keep all the information the Sellers may acquire concerning the commercial activity of the Buyer in strict confidence to the extent permitted by the Public Information Act.  The Sellers will not disclose, divulge, or reveal that information or any part of it to any person other than those employees of the Sellers or State employees or agents who reasonably have a need for such information and who are similarly bound.*

12. **Indemnity**

(a) <u>Sellers' Indemnity</u>:  Subject to Section 13, commencing on the Execution Date, each Seller will indemnify, defend and hold Buyer, its officers, directors, employees and agents harmless from and against all demands, claims, actions, losses, damages, liabilities, costs and expenses, including, without limitation, reasonable attorneys' fees and expenses (collectively, "**Costs**"), asserted against, imposed upon or incurred by Buyer resulting from:  (i) any breach of any covenant, agreement, representation or warranty of Seller contained in, or made pursuant to, this Agreement or in any of Seller's closing deliveries; (ii) any and all liabilities (including successor liabilities) or obligations relating to periods prior to the Closing Date resulting from Seller's operation under the License or from Seller's employment, or termination of employment of its employees; (iii) any claim or finders' fee or brokerage or other commission arising by reason of any services alleged to have been rendered to or at the insistence of Seller with respect to this Agreement or any of the transactions contemplated by this Agreement; and (iv) any and all costs and expenses incident to any of the foregoing or incurred in investigating or attempting to avoid any of the foregoing or to oppose their imposition, or in enforcing this indemnity. Sellers' duty to indemnify under this section shall be contingent upon an appropriation by the Maryland General Assembly to Sellers specifically for the purposes contemplated in this paragraph at the time an event which may give rise to Sellers' obligation to indemnify or hold harmless occurs, and to the extent that a tort claim is involved. Sellers' obligations shall not be greater than the liability that might be determined under the Maryland Tort Claims Act §12-101 et seq. of the State Government Article, Annotated Code of Maryland, if the claim had been asserted against Sellers as provided by the Act.

Buyer acknowledges and agrees that Sellers shall not be liable to Buyer for any liability, cost, expenses, or loss of Buyer due to the failure of the FCC to act or to grant the FCC Consent or Sellers inability to obtain required third party consent.

**CONFIDENTIAL**

(b) Buyer's Indemnity:  Subject to Section 13, commencing on the Execution Date, Buyer will indemnify, defend and hold a Seller, its officers, directors, employees and agents harmless from and against all Costs asserted against, imposed upon or incurred by Seller resulting from: (i) any breach of any covenant, agreement, representation or warranty of Buyer contained in, or made pursuant to, this Agreement or in any of Buyer's closing deliveries; (ii) any and all liabilities or obligations relating to periods after the Closing Date resulting from Buyer's operation under the License or assignment and transfer of the License or from Buyer's employment, or termination of employment of its employees; (iii) any claim or finders' fee or brokerage or other commission arising by reason of any services alleged to have been rendered to or at the insistence of Buyer with respect to this Agreement or any of the transactions contemplated by this Agreement; and (iv) any and all costs and expenses incident to any of the foregoing or incurred in investigating or attempting to avoid the same or to oppose the imposition thereof, or in enforcing this indemnity.

13.  **Limitation of Liability**:  Notwithstanding anything in this Agreement to the contrary, in no event shall any Party be liable for indirect, special, consequential (including, but not limited to lost profits), punitive damages or exemplary damages to another Party arising out of a breach of this Agreement, even if advised at the time of breach of the possibility of such damages, except with respect to such damages payable by any indemnified party to any third party.  In no event shall either Party be liable for damages in excess of the Consideration.   Any liability incurred by a Party in connection with this Agreement shall be without recourse to the Party's owners, officers, managers, directors and agents and it is agreed that such persons shall be free from liability with respect to this Agreement and the transaction of this Agreement, regardless of whether such liability is asserted under theory of contract, tort, statutory or other type of claim.

14. **Termination**: This Agreement may be terminated and the transactions contemplated by this Agreement abandoned: (i) by mutual consent of the Parties provided in writing; (ii) by a Party upon material breach of the other Party of this Agreement, following a thirty (30) day period for cure that was unresolved by the breaching Party following written notice of the breach; or (iii) by Buyer, in the event that the Closing has not occurred within one (1) year from the date of filing an Assignment Application. This Agreement terminates upon the Closing Date, except with respect to those paragraphs that are intended to survive such termination as provided therein.

15.  **Reserved**.

16.  **Waiver**:  Buyer and Sellers, by written notice to the other, may (a) extend the time for performance of any of the obligations or other actions of the other under this Agreement, (b) waive any inaccuracies in the representations or warranties of the other contained in this Agreement or in any document delivered pursuant to this Agreement, (c) waive compliance with any of the conditions or covenants of the other contained in this Agreement, or (d) waive or modify performance of any of the obligations of the other under this Agreement; provided that neither Party may without the written consent of the other make or grant any extension of time, waiver of inaccuracies or compliance, or waiver or modification of performance, with respect to its own obligations, representations, warranties, conditions or covenants in this Agreement.  Except as provided in the preceding sentence, no action taken pursuant to this Agreement will be deemed to constitute a waiver of compliance with any representation, warranty, covenant or agreement contained in this Agreement and will not operate or be construed as a waiver of any subsequent breach, whether of a similar or dissimilar nature.

17. **Attorney's Fees and Costs**:  Should either Party retain the services of an attorney to file an action to enforce any of its rights under this Agreement, or under any other document executed and delivered pursuant to this Agreement, the Party prevailing in the action will not be entitled to recover reasonable attorney's fees and court costs in connection with that action.

18. **Notices:**  All notices and other communications hereunder shall be in writing and shall be deemed given (i) the same day if delivered personally or sent by facsimile; (ii) the next business day if sent by overnight delivery via a reliable express delivery service; (iii) after five (5) business days if sent by certified mail, return receipt requested, postage prepaid; or (iv) during the Covid-19 pandemic, the same day if delivered by email. All notices shall be delivered to the Parties at the following addresses (or at such other address for a party as shall be specified by like notice, provided that notice of change of address shall be effective only upon receipt thereof):

(a) <u>If to Sellers, to:</u>

<u>University of Maryland Eastern Shore:</u>

Lester Primus, MBA
Vice President of Administration and Finance
J.T. Williams Hall, Suite 1106
University of Maryland Eastern Shore
Princess Anne, MD 21853
Phone: (410) 651-6230
lsprimus@umes.edu

<u>with copy to:</u>
Matthew A. Taylor
General Counsel
J.T. Williams Hall, Suite 2101
Phone: (410) 651-7800
mataylor3@umes.edu

<u>Salisbury University:</u>

Janet Wormack
Vice President of Administration and Finance
1101 Camden Ave.
Salisbury, MD  21801
Phone: (410) 543-6050
jewormack@salisbury.edu

<u>With copy to:</u>
Karen A. Treber

DocuSign Envelope ID: 19EBB0AF-311A-46AB-A138-384CF653B30D

General Counsel
1101 Camden Ave.
Salisbury, MD  21801
Phone: (410) 548-2330
katreber@salisbury.edu

Wor-Wic Community College:

Murray K. Hoy
President
32000 Campus Dr.
Salisbury, MD  21804
Phone: (410) 334-2810
rhoy@worwic.edu


b)  If to Buyer, to:

TDI Acquisition Sub, LLC
C/O T-Mobile
Attn: Heather P. Brown, Director Legal Affairs
12502 Sunrise Valley Drive
MAILSTOP: VARESA0209-2D187
Reston, VA 20196
Phone:  (703) 433-4467
heather.brown1@t-mobile.com


19. **Assignment:** All covenants, agreements, representations, warranties and indemnities shall be binding upon, and inure to the benefit of, the parties and their respective successors and permitted assigns.  This Agreement may not be assigned except that either party may assign its rights under this Agreement to the direct or indirect subsidiary or affiliate of either party, upon delivery of written notice to the other party, provided that, such assignment does not delay, and is not reasonably expected to delay, receipt of the FCC Consent, or consummation of the transactions contemplated herein. No assignment of Buyer's rights under this Agreement shall relieve Buyer of its obligations under this Agreement. From the Effective Date until the date on which the assignment application is filed with the FCC, Buyer may unilaterally choose which affiliate, subsidiary or corporate entity within the T-Mobile brand to take assignment of the Licenses. Buyer will notify Licensees of any such entity change as soon as possible via email.

20. **Counterparts**:  This Agreement may be executed in one or more counterparts, which shall be effective as original agreements of the Parties executing such counterpart. Original signatures transmitted by email shall be effective to create such counterparts.

21. **Schedules:**  All references in this Agreement to "Schedules" shall mean the disclosure schedules identified in this Agreement and listed at the end hereof, which are incorporated herein

**CONFIDENTIAL**

by reference and shall be deemed a part of this Agreement for all purposes. Failure to attach any Schedule referenced herein shall not affect the binding nature of this Agreement.

22. **Governing Law; Venue:**  This Agreement shall be governed by the laws of the State of Maryland without giving effect to conflict of laws provisions thereof.

23. **Interpretation:**  All headings used in this Agreement are for convenience of reference only and shall not be deemed to have any substantive effect.  Notwithstanding any law or rule of contract interpretation to the contrary, this Agreement shall not be interpreted strictly for or against any party hereto. Each of the Parties certifies to the other that it has reviewed this Agreement with, and is relying solely upon the advice of, its independent counsel and tax advisor, as to the negotiation, preparation, execution and delivery of this Agreement and as to the legal and tax implications hereunder.  In the event that any covenant, condition or other provision contained in this Agreement is held to be invalid, void or unlawful by any administrative agency or court of competent jurisdiction, that provision shall be deemed severable from the remainder of this Agreement and shall in no way affect, impair or invalidate any other covenant, condition or other provision contained herein, and the parties shall use their reasonable best efforts to make the covenant, condition or other provision valid and lawful if possible so as to preserve the rights and obligations of the parties hereto.

24. **Complete Agreement; Amendment:**  This Agreement, together with the Schedules hereto, constitutes the entire understanding and agreement between the Parties concerning the subject matter hereof, superseding all prior oral or written agreements or understandings.  This Agreement may not be changed, modified or altered except by an agreement in writing executed by the Parties.

*[Signature page to follow]*

**CONFIDENTIAL**

IN WITNESS WHEREOF, this Agreement will be effective as a binding agreement among the Parties upon being fully executed by the Parties indicated below.

SELLERS:                                   BUYER:

**University of Maryland Eastern Shore**     **TDI Acquisition Sub, LLC**

By:_____                     By:_____
Name:  Lester Primus  01 / 06 / 2022         Name:  Jay D. Bluhm
Title:   Vice President                      Title: Vice President, RF & Spectrum
                                             Engineering


**Salisbury University**                     Reviewed by Legal

By:_____
Name: Charles Wight  12/29/2021              By:_____
Title:   President                           Name: Toni Haddix
                                             Title: Principal Corporate Counsel


**Wor-Wic Community College**                Reviewed by Spectrum

By:_____                      By:_____
Name:  Murray K. Hoy                         Name: Paul McCarthy
Title:   President                           Title: Senior Director

**CONFIDENTIAL**

IN WITNESS WHEREOF, this Agreement will be effective as a binding agreement among the Parties upon being fully executed by the Parties indicated below.

SELLERS:

BUYER:

**University of Maryland Eastern Shore**

**TDI Acquisition Sub, LLC**

By:_____
Name: Lester Primus
Title:    Vice President

By: _____
  *Jay Bluhm*
Name:  Jay D. Bluhm
Title: Vice President, RF & Spectrum
Engineering

**Salisbury University**

By: _____
Name: Charles Wight
Title:    President

Reviewed by Legal

By:_____
  *Toni Haddix*
Name: Toni Haddix
Title: Principal Corporate Counsel

**Wor-Wic Community College**

By: _____
Name:  Murray K. Hoy
Title:    President

Reviewed by Spectrum

By: _____
  *Paul McCarthy*
Name: Paul McCarthy
Title: Senior Director

DocuSign Envelope ID: 19EBB0AF-311A-46AB-A138-384CF653B30D

CONFIDENTIAL

## SCHEDULE 1

### LICENSES

| Licensee | Market | Call Sign | Authorized Channels | License Expiration | |
|---|---|---|---|---|---|
| Salisbury University, formerly Salisbury State University | Salisbury, MD | WNC436 | A1, A2, A3, A4, J/K | 9/7/2024 | |
| University of Maryland Eastern Shore | Salisbury, MD | WNC437 | B1, B2, B3, B4, J/K | 9/7/2024 | |
| Wor-Wic Community College | Salisbury, MD | WNC463 | C1, C2, C3, C4, J/K | 10/12/2024 | |

## Attachment A

**Licensee and FCC Electronic Filing Information Form**

Licensee:

| FCC Registration Number | To be provided for each Licensee |
|---|---|
| FCC ULS Password (if unknown, see below) | To be provided for each Licensee |
| Contact Information | Stephen Coran, counsel to the Licensees |
| Federal Tax ID Number (see below) | To be provided for each Licensee |

**CONFIDENTIAL**

## **Attachment B**

**Payment Instructions**

PAYEE INFORMATION

*The following questions are required for processing Electronic Funds Transfer.  All information contained herein shall be kept strictly confidential. Parts I-III of this Schedule B must be completed and provided to Clearwire prior to Clearwire's assistance with any FCC filing or payment processing.*

**I. INFORMATION**
*Please provide the following information:*

      Company/Name:
      Contact:
      Title:
      Address:
      City/State/Zip:
      Phone:
      Fax:


**II. BANK ACCOUNT INFORMATION (Required** for payment processing.)
Payment method:  **Wire Transfer**

Name of Bank:

Address of Bank:

City/State/Zip:

Bank Phone #:

ABA (Wire Routing #):

Account #:

Name on Account:

Name of Brokerage Firm (if applicable): _____

Brokerage Account # (if applicable): _____

Company/Name: _____

**CONFIDENTIAL**

**Attachment C**

**IRS Form W9 (2018 form)**

DocuSign Envelope ID: 19EBB0AF-311A-46AB-A138-384CF653B30D

**CONFIDENTIAL**

**Attachment D**

**Closing Documents**