## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND
## BALTIMORE DIVISION

BLOOSURF, LLC,

                    Plaintiff,

v.                                                  Case No. 1:24-cv-1047-RDB

T-MOBILE USA, INC. and TDI ACQUISITION
SUB, LLC,

                    Defendants.

## <u>REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS</u>

WILLIAMS & CONNOLLY LLP

Kenneth J. Brown (*pro hac vice*)
R. Kennon Poteat III (*pro hac vice*)
Jessica Bodger Rydstrom (Bar No. 20692)
William I. Stewart (*pro hac vice*)
Teresa M. Wogoman (*pro hac vice*)

680 Maine Avenue SW
Washington, DC 20024
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
kbrown@wc.com
kpoteat@wc.com
jrydstrom@wc.com
wstewart@wc.com
twogoman@wc.com

*Attorneys for T-Mobile USA, Inc. and TDI
Acquisition Sub, LLC*

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................1

ARGUMENT .....................................................................................................................3

    I.    THE FCC HAS EXCLUSIVE JURISDICTION OVER PLAINTIFF'S
         CLAIMS. ............................................................................................................3

    II.    THE FCC HAS PRIMARY JURISDICTION OVER PLAINTIFF'S
         CLAIMS. ............................................................................................................6

    III.    PLAINTIFF'S STATE-LAW CLAIMS ARE PREEMPTED.....................................8

    IV.    PLAINTIFF FAILS TO STATE A SECTION 333 CLAIM. ...................................10

    V.    PLAINTIFF FAILS TO STATE CLAIMS FOR TORTIOUS
         INTERFERENCE. ...............................................................................................13

    VI.    PLAINTIFF FAILS TO STATE A CLAIM FOR NEGLIGENCE............................14

    VII.    PLAINTIFF FAILS TO STATE A PRIVATE NUISANCE CLAIM.......................15

    VIII.    PLAINTIFF'S DAMAGES REQUEST FAILS BASIC PLEADING
         RULES. ..............................................................................................................15

CONCLUSION.................................................................................................................15

# TABLE OF AUTHORITIES

## CASES

*Acumen Commc'ns, Inc. v. City of Covina*,
2017 U.S. Dist. LEXIS 25677 (C.D. Cal. Feb. 14, 2017)....................................5

*Alexander & Alexander Inc. v. B. Dixon Evander & Assocs., Inc.*,
650 A.2d 260 (Md. 1994) ...............................................13

*APCC Servs., Inc. v. WorldCom, Inc.*,
305 F. Supp. 2d 1 (D.D.C. 2001) ....................................12

*Bastien v. AT&T Wireless Servs.*,
205 F.3d 983 (7th Cir. 2000) .........................................10

*Broyde v. Gotham Tower, Inc.*,
13 F.3d 994 (6th Cir. 1994) ........................................ *passim*

*Buckman Co. v. Plaintiffs' Legal Comm.*,
531 U.S. 341 (2001).......................................................14

*Califano v. Sanders*,
430 U.S. 99 (1977).........................................................6

*Capital Tel. Co. v. FCC*,
777 F.2d 868 (2d Cir. 1985)...........................................12

*DePaola v. Clarke*,
884 F.3d 481 (4th Cir. 2018) .........................................12

*EndoSurg Med., Inc. v. EndoMaster Med., Inc.*,
71 F. Supp. 3d 525 (D. Md. 2014)...................................13

*Eric B. Fromer Chiropractic, Inc. v. Inovalon Holdings, Inc.*,
329 F. Supp. 3d 146 (D. Md. 2018)...................................6

*Firstcom, Inc. v. Qwest Corp.*,
555 F.3d 669 (8th Cir. 2009) .........................................9

*Freeman v. Burlington Broadcasters, Inc.*,
204 F.3d 311 (2d Cir. 2000)...........................................3

*Gorman v. Sabo*,
210 Md. 155 (1956) .....................................................15

*Head v. N.M. Bd. of Examiners in Optometry*,
    374 U.S. 434 (1963) .......................................................................................................3

*Himmelman v. MCI Commc'ns Corp.*,
    104 F. Supp. 2d 1 (D.D.C. 2000) ....................................................................................7

*Howington v. Spectrasite Commc'ns, Inc.*,
    2006 WL 335580 (S.D. Ala. Feb. 13, 2006).....................................................................5

*Howlette v. Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C.*,
    2011 WL 310264 (D. Md. Jan. 28, 2011) .......................................................................15

*In re 960 Radio, Inc., Licensee of Station KJSN(FM), Klamath Falls, Or.*,
    1985 WL 193883 (F.C.C. Nov. 4, 1985) ..........................................................................3

*In re Apple iPhone 3G Prods. Liab. Litig.*,
    728 F. Supp. 2d 1065 (N.D. Cal. 2010) ...........................................................................8

*In re Long Distance Telecomms. Litig.*,
    831 F.2d 627 (6th Cir. 1987) ...........................................................................................5

*In re Mocatta Metals Corp.*,
    44 F.C.C.2d 605 (1973) ..................................................................................................11

*In re Series 7 Brokerage Qualification Exam Scoring Litig.*,
    510 F. Supp. 2d 35 (D.D.C. 2007) ...................................................................................9

*Jacques v. First Nat'l Bank of Md.*,
    515 A.2d 756 (Md. 1986) ...............................................................................................14

*Johnson v. Am. Towers LLC*,
    781 F.3d 693 (4th Cir. 2015) .....................................................................................9, 10

*Macklin v. Robert Logan Assocs.*,
    639 A.2d 112 (Md. 1994) ...............................................................................................13

*MCI Telecomms. Corp. v. Garden State Inv. Corp.*,
    981 F.2d 385 (8th Cir. 1992) ...........................................................................................9

*MCI Telecomms., Inc. v. T.A. Commc'ns, Inc.*,
    40 F. Supp. 2d 728 (D. Md. 1999)..................................................................................14

*McRae v. Westcor Land Title Ins.*,
    2017 WL 1239682 (D. Md. Mar. 17, 2017).......................................................................9

*Nat'l Advert. Co. v. City of Raleigh*,
    947 F.2d 1158 (4th Cir. 1991) ........................................................12

*Nuvio Corp. v. FCC*,
    473 F.3d 302 (D.C. Cir. 2006) ........................................................14

*Petrovia v. Prime Care Med. Inc.*,
    2021 WL 307414 (D. Md. Jan. 29, 2021)........................................7

*Premier Network Servs., Inc. v. SBC Commc'ns, Inc.*,
    440 F.3d 683 (5th Cir. 2006) ........................................................11

*Quidera v. Blackstone Labs, LLC*,
    2021 WL 4958789 (S.D. Fla. Mar. 8, 2021)......................................7

*Sierra v. City of Hallandale Beach*,
    904 F.3d 1343 (11th Cir. 2018) ......................................................5

*Still v. Michaels*,
    791 F. Supp. 2d 248 (D. Ariz. 1992) ..............................................8

*Sumby v. Jackson*,
    2021 WL 916222 (Md. Ct. Spec. App. Mar. 9, 2021)......................15

*Sw. Bell Wireless Inc. v. Johnson Cty. Bd. of Cty. Comm'rs*,
    199 F.3d 1185 (10th Cir. 1999) ......................................................8

*Swearingen v. Yucatan Foods, L.P.*,
    59 F. Supp. 3d 961 (N.D. Cal. 2014) ..............................................7

*Syntek Semiconductor Co. v. Microchip Tech., Inc.*,
    307 F.3d 775 (9th Cir. 2002) ....................................................7, 8

*Unigestion Holding, S.A. v. UPM Tech., Inc.*,
    2017 U.S. Dist. LEXIS 74289 (D. Or. May 16, 2017) ......................5

*United Food & Commercial Workers Int'l Union v. Wal-Mart Stores, Inc.*,
    228 Md. App. 203 (2016) ............................................................15

**STATUTES**

47 U.S.C.

§ 207.................................................................................................................5, 10, 11

§ 301.........................................................................................................................3

§ 303.........................................................................................................................3

§ 332.........................................................................................................................8

§ 333.....................................................................................................................5, 9

§ 414.....................................................................................................................6, 9

§ 415.......................................................................................................................11

**LEGISTLATIVE MATERIALS**

H.R. Conf. Rep. 97-765 (1982)....................................................................................3

## <u>INTRODUCTION</u>

Bloosurf's complaint centers on alleged interference with wireless telecommunications spectrum—a technical matter that, as Bloosurf has emphasized, lies at the "core" of the FCC's regulatory authority. Ex. 7 at 4.[1]  Court after court facing such interference claims has concluded that the Commission has exclusive jurisdiction to resolve them.  *See* Mot. 14–15; *infra* Part I. Bloosurf offers no compelling response to that body of law—indeed, with a single exception, it does not even acknowledge any of those decisions.

Instead, in trying to recast its claims as non-technical in order to avoid FCC jurisdiction, Bloosurf underscores why this case belongs before the Commission.  Beyond littering its brief with specialized matters like "subframe configuration[s]," "pattern[s] of up-linking and downlinking," and "throughput/distance calculator[s]," Bloosurf goes out of its way to emphasize that the threshold issue this Court will need to resolve is:  "[D]id the interference occur[?]"  Opp. 5, 7 n.5, 14.  Even its lone (ostensibly) contract-based claim—for tortious interference with the Lease Agreement—is premised on "interference with . . . spectrum."  *Id.* at 24.  Spectrum interference, however, "falls within the FCC's technical domain."  *Broyde v. Gotham Tower, Inc.*, 13 F.3d 994, 997 (6th Cir. 1994).  That undoubtedly is why Bloosurf first filed a complaint with the Commission making substantially the same interference allegations as it does here, and to this day continues to seek intra-agency review of the FCC's dismissal of that complaint.

Bloosurf's position concerning the Lease Agreement is fatally flawed as well.  Less than two years ago, Bloosurf represented to this Court that the "EBS Lease[] . . . [is] set to expire in September-October 2024."  Ex. 1 ¶ 59.  As discussed in T-Mobile's opening brief, on that point Bloosurf was correct.  *See* Mot. 5–6.  Now Bloosurf tries to walk back its unambiguous and

---

[1] All exhibits cited as "Ex. __" are Exhibits to the Declaration of William I. Stewart in Support of Defendants' Motion to Dismiss, Dkt. 23-2.

repeated "statements . . . in the prior cases" that the Lease Agreement expires this year—or, as Bloosurf euphemistically puts it, to "clarif[y] its position." Opp. 25. But the relevance of Bloosurf's statements is not that they constituted "factual findings" or give rise to "claim preclusion." *Id.* Rather, it is that they were candid, accurate statements **to this and other Courts** about the status of the Lease Agreement. Put differently, Bloosurf correctly states "that 'the terms of the Lease . . . were structured so as to match the EBS License expiration dates.'" *Id.* at 3. The problem for Bloosurf is that, because "the Licenses . . . run until 2024," *id.* at 2, so does the Lease Agreement.

Unable to surmount these hurdles, Bloosurf is left to mischaracterize T-Mobile's arguments. For instance, it asserts (at 20) that T-Mobile "claim[s] [Bloosurf has] no cause of action" under the FCA—but T-Mobile never made that argument. It faults (at 3 n.3) T-Mobile for attacking Bloosurf's "'dishonesty'"—but T-Mobile never used that word. It claims (at 17) the "interference is undisputed"—when it is very much not, as Bloosurf elsewhere acknowledges. *See* Opp. 14 ("did the interference occur"). And it claims (at 6) that T-Mobile's 5G rollout "was not covered by the FCC's 2021 inquiry; nor has it ever been addressed"—when exhibits to Bloosurf's complaint show 5G matters were discussed with the FCC in 2021, *see* Dkt. 1-16 at 9, and Bloosurf's FCC complaint—which the agency dismissed—expressly "request[ed] that the Commission investigate existing and potential harmful interference from T-Mobile's 5G NR operations," Opp. 8.

Fortunately, this Court need not wade into these issues—this is why the FCC has jurisdiction over this case. Whether under the doctrine of exclusive jurisdiction, primary jurisdiction, or preemption—or due to Bloosurf's many independent pleading failures—the complaint should be dismissed.

<u>ARGUMENT</u>

**I.    THE FCC HAS EXCLUSIVE JURISDICTION OVER PLAINTIFF'S CLAIMS.**

"[R]adio frequency interference" is a "'technical matter[]'" over which "the FCC's jurisdiction is . . . 'clearly exclusive.'" *Broyde*, 13 F.3d at 997 (quoting *Head v. N.M. Bd. of Examiners in Optometry*, 374 U.S. 434, 430 n.6 (1963)).  This result follows straightforwardly from the Federal Communications Act.  The Act provides that one of its "purpose[s] [is] . . . to maintain the control of the United States over all the channels of radio transmission; and to provide for the use of such channels . . . under licenses granted by Federal authority."  47 U.S.C. § 301; *see also Head*, 374 U.S. at 430 n.6 (citing § 301).  Likewise, the Act empowers the FCC to "[a]ssign bands of frequencies . . . [and] [r]egulate the kind of apparatus to be used with respect to its external effects."  47 U.S.C. § 303(c), (e); *see also Freeman v. Burlington Broadcasters, Inc.*, 204 F.3d 311, 320 (2d Cir. 2000) (citing § 303).  "These statutory provisions make it clear that Congress intended the FCC to possess exclusive authority over technical matters related to radio broadcasting"—such as "RF interference." *Freeman*, 204 F.3d at 320–21.[2]

Under those principles, exclusive jurisdiction over this case lies with the FCC.  Spectrum interference is the core of Bloosurf's complaint.  Even under Bloosurf's framing, the threshold issue in this case is: "[D]id the interference occur[?]"  Opp. 14.  Technical interference issues— from "'subframe' configurations" and "5G transmission[s]" to the "17.4MHz space" and "EBS frequency band[s]"—form the basis for more than 50 paragraphs in the complaint and each of Bloosurf's claims. *See, e.g.*, Compl. ¶¶ 48–106; Mot. 12, 15.  Bloosurf does not dispute that these are the same allegations it continues to press before the FCC.  Ex. 7; Mot. 12.

---

[2] FCC decisions and legislative history further support this result.  *See In re 960 Radio, Inc., Licensee of Station KJSN(FM), Klamath Falls, Or.*, 1985 WL 193883, at *2 (F.C.C. Nov. 4, 1985) ("[E]xclusive jurisdiction to resolve questions involving interference has been assigned to the FCC."); H.R. Conf. Rep. 97-765, at 33 (1982) ("Exclusive jurisdiction over RFI incidents . . . lies with the FCC." (some capitalization omitted)).

While at times Bloosurf's opposition brief tries to run from the complaint—asserting (at 12) that "consideration of wireless spectrum operations" is merely "part" of the case—elsewhere it cannot help but refute such assertions by emphasizing the centrality of its interference allegations. For instance, Bloosurf expends great effort explaining "uplink/downlink patterns" and "switching from SSF2 to SSF7[] to mitigate the presence of a 5G NR network" (at 5, 7 n.5); deems "special subframe 7" sufficiently key to its claims to be worth emphasizing in bold (at 5); and devotes an entire section of its brief to the so-called "Subframe Debacle" (at 6). Simply put, the complaint overwhelmingly is premised on alleged spectrum interference. *See* Mot. 11–12, 14–17. Even its claim for tortious interference with the Lease Agreement, Bloosurf now concedes (at 24), is based on "interference with . . . spectrum." The problem for Bloosurf is that—as it previously has underscored—addressing "interference" is "[o]ne of the Commission's core missions." Ex. 7 at 4.

Faced with the unavoidable (and commonsensical) result that this case should be before the FCC, Bloosurf tries a variety of end runs around it. *First*, Bloosurf tries (at 12) to brush aside the Sixth Circuit's exclusive-jurisdiction holding in *Broyde* as "not applicable here." But the opposite is true. In *Broyde*, the plaintiffs alleged that "defendants' radio signals interfere[d] with the operation of [plaintiffs'] equipment." 13 F.3d at 996. Reasoning that the "FCC[] [has] exclusive jurisdiction over the regulation of radio frequency interference," the Court of Appeals affirmed dismissal of the complaint. *Id.* at 997. Here, the allegations are materially the same, and the result should be too. While Bloosurf nitpicks the Supreme Court's decision in *Head*—which *Broyde* quoted from once—for not discussing interference specifically, Opp. 12, that is irrelevant because *Broyde* squarely involved and addressed interference. Tellingly, Bloosurf fails even to acknowledge—let alone grapple with—the Second Circuit's decision in *Freeman* or any of the

other cases cited by T-Mobile that likewise concluded that the FCC has exclusive jurisdiction over interference matters.  *See* Mot. 15; *Howington v. Spectrasite Commc'ns, Inc.*, 2006 WL 335580, at *2–3 (S.D. Ala. Feb. 13, 2006) (collecting cases).

*Second*, lacking any compelling answer to those cases, Bloosurf directs the Court to others. None of those authorities supports jurisdiction here.  All but one had nothing to do with radio frequency interference—the predicate for FCC jurisdiction here.  *See Unigestion Holding, S.A. v. UPM Tech., Inc.*, 2017 U.S. Dist. LEXIS 74289, at *16 n.5 (D. Or. May 16, 2017) (distinguishing *Broyde* as "hing[ing]" on "RFI" over which the FCC has "exclusive jurisdiction"); *Sierra v. City of Hallandale Beach*, 904 F.3d 1343, 1347–48 (11th Cir. 2018) (alleged failure to provide closed captioning); *In re Long Distance Telecomms. Litig.*, 831 F.2d 627, 633–34 (6th Cir. 1987) (alleged overcharging for calls—and thus distinguished by *Broyde*, 13 F.3d at 997, for not involving "radio signal interference").  And the one case that did concern interference did not feature any claim premised on it—instead, the court reasoned that the claim there (for a bid-rigging conspiracy) could "stand or fall regardless of radio interference."  *Acumen Commc'ns, Inc. v. City of Covina*, 2017 U.S. Dist. LEXIS 25677, at *7, *10–11 (C.D. Cal. Feb. 14, 2017).  That is a far cry from this case, where each of Bloosurf's claims centers entirely on interference—including one brought under the FCA's "Interference" provision, 47 U.S.C. § 333.

*Third*, Bloosurf turns to Section 207 of the FCA, claiming it "conclusively establishes" that this Court has jurisdiction over "claims for damages against common carriers."  Opp. 11.  Not so. As relevant, Section 207 allows for a "suit for the recovery of damages for which [a] common carrier may be liable under the provisions of this chapter, in any district court of the United States *of competent jurisdiction*."  47 U.S.C. § 207 (emphasis added).  It is well-established that use of a term like "court of . . . competent jurisdiction" shows that a statute is "not intended as an

independent jurisdictional foundation." *Califano v. Sanders*, 430 U.S. 99, 106 n.6 (1977).  Rather, for jurisdiction to lie there must be an "outside source[] of jurisdictional authority."  *Id.*  Here, the relevant authorities—including Sections 301 and 303 of the FCA and decision after decision by the courts—show that exclusive jurisdiction over radio frequency interference allegations lies with the FCC.  *See supra* pp. 3–5; Mot. 14–15.

*Finally*, Bloosurf turns to the FCA's savings clause, 47 U.S.C. § 414.  Opp. 12.  But Section 414 states only that the FCA does not "abridge or alter the **remedies** now existing at common law or by statute."  47 U.S.C. § 414 (emphasis added).  The provision says nothing about jurisdiction, and therefore offers no support to Bloosurf's jurisdictional argument.

## II.    THE FCC HAS PRIMARY JURISDICTION OVER PLAINTIFF'S CLAIMS.

Each of the four factors courts evaluate in considering the primary jurisdiction doctrine favors applying the doctrine here.  *See* Mot. 17–19; *Eric B. Fromer Chiropractic, Inc. v. Inovalon Holdings, Inc.*, 329 F. Supp. 3d 146, 155 (D. Md. 2018) (enumerating those factors).  *First*, the FCC unquestionably has expertise in the highly technical spectrum interference allegations that lie at the core of this action.  Mot. 18.  *Second*, as Bloosurf has emphasized, such spectrum interference matters fall squarely within the FCC's discretion.  *Id.*; Ex. 7 at 4.  *Third*, the risk of inconsistent rulings is manifest because, *fourth*, Bloosurf currently has an Application for Review pending for review with the FCC concerning the identical subject matter.  Mot. 18–19; Ex. 13.  One could hardly imagine a clearer case for deferring to the FCC's primary jurisdiction.

In response, Bloosurf offers a series of red herrings.  It notes that the doctrine does not deprive the Court of jurisdiction or apply to legal issues.  That is correct, and T-Mobile did not suggest otherwise.  *See* Mot. 17 (noting that "primary jurisdiction does not—despite its name—implicate federal subject matter jurisdiction").  Although Bloosurf suggests that, where the doctrine applies, a stay (as opposed to dismissal) is warranted, the opposite typically is true.

"Normally, if the court concludes that the dispute which forms the basis of the action is within the agency's primary jurisdiction, the case should be dismissed without prejudice so that the parties may pursue their administrative remedies." *Syntek Semiconductor Co. v. Microchip Tech., Inc.*, 307 F.3d 775, 782 (9th Cir. 2002) (amended); *see also Quidera v. Blackstone Labs, LLC*, 2021 WL 4958789, at *4 (S.D. Fla. Mar. 8, 2021) (dismissing case pursuant to primary jurisdiction doctrine); *Swearingen v. Yucatan Foods, L.P.*, 59 F. Supp. 3d 961, 964–65 (N.D. Cal. 2014) (same); *Himmelman v. MCI Commc'ns Corp.*, 104 F. Supp. 2d 1, 8–9 (D.D.C. 2000) (same).  That is especially the case where, as here, the plaintiff ***already*** is pursuing its administrative remedies.

In claiming the doctrine does not apply, Bloosurf effectively concedes that it does. Bloosurf admits that the issues regarding "subframe technology" that lie at the heart of its complaint, *see* Compl. ¶¶ 79–95, "potentially fall under the purview of the FCC," Opp. 17.  It similarly states that "the factual issues in question potentially reviewable by the FCC are those concerning the technical aspects of the interference."  *Id.*  Bloosurf's only response is to assert, oddly, that the Court need not address those issues because the interference purportedly "is undisputed."  *Id.*  That is false; were the Court to reach the merits of this case, Bloosurf's allegations of interference would be hotly disputed, just as they currently are before the FCC .  The fact that T-Mobile did not take issue with those factual averments in its opening brief is no surprise; a Rule 12(b)(6) motion presumes the truth of the plaintiff's well-pleaded factual allegations, and as such is not the proper forum for T-Mobile to contest these factual issues.  *See Petrovia v. Prime Care Med. Inc.*, 2021 WL 307414, at *2 (D. Md. Jan. 29, 2021).

The only other argument made by Bloosurf on this point is that, if the primary jurisdiction doctrine does apply, the Court should stay, rather than dismiss, this case.  But as noted, dismissal— not a stay—is the "[n]ormal[]" remedy when a case falls within the primary jurisdiction of an

agency. *Syntek Semiconductor*, 307 F.3d at 782.  Although Bloosurf claims it would be "unfairly prejudice[d]" by dismissal, its only support for this assertion is the allegation that it "continues to suffer damage at the hands of T-Mobile."  Opp. 17.  Setting aside that that claim is incorrect, it is precisely that supposed harm which Bloosurf currently seeks to redress before the FCC.  *See* Ex. 7 at 1 (asking FCC to "investigate the operations of T-Mobile" over alleged "persistent . . . harmful interference" with Bloosurf's network).  Dismissal of this lawsuit, as compared with a stay, will have no effect on that supposed prejudice.

## III.    PLAINTIFF'S STATE-LAW CLAIMS ARE PREEMPTED.

"Congress intended federal regulation of RFI issues to be so pervasive as to occupy the field."  *Sw. Bell Wireless Inc. v. Johnson Cty. Bd. of Cty. Comm'rs*, 199 F.3d 1185, 1193 (10th Cir. 1999).  As with exclusive jurisdiction, this result follows from the text of the FCA.  The Act's "state preemption" provision grants the FCC exclusive authority to "regulate the entry of . . . any commercial mobile service."  47 U.S.C. § 332(c)(3)(A).  In so doing, the FCA preempts state laws that would "alter the federal regulation" of the "modes and conditions" of a wireless telecommunications provider's service.  *In re Apple iPhone 3G Prods. Liab. Litig.*, 728 F. Supp. 2d 1065, 1071 (N.D. Cal. 2010).  This includes state-law claims concerning interference—as "virtually all courts considering RFI preemption" have concluded.  *Sw. Bell Wireless*, 199 F.3d at 1192–93 (citing cases); *see also, e.g.*, *Broyde*, 13 F.3d at 997; *Still v. Michaels*, 791 F. Supp. 2d 248, 252 (D. Ariz. 1992); Mot. 21–22 (citing cases).

Bloosurf has no answer to any of that.  It does not even acknowledge Section 332, despite that provision featuring heavily in T-Mobile's opening brief.  *See* Mot. 20–22.  It says nothing about the fact that its complaint seeks to impose state-law duties concerning the "modes and conditions" of T-Mobile's service.  *In re Apple*, 728 F. Supp. 2d at 1071; *see* Mot. 21.  And—aside from its uncompelling attempt to dismiss *Broyde*, *see supra* Part I—nowhere does Bloosurf

address any of the cases cited by T-Mobile finding state-law interference claims preempted.  *See*

Mot. 21–22.  By "fail[ing] to address the[se] issues," Bloosurf has "conceded the[m]."  *McRae v.*

*Westcor Land Title Ins.*, 2017 WL 1239682, at *3 (D. Md. Mar. 17, 2017).

Instead, Bloosurf again seeks refuge in the FCA's savings clause and *Johnson v. Am.*

*Towers LLC*, 781 F.3d 693 (4th Cir. 2015).  *See* Opp. 18–19.  T-Mobile already has shown why

neither supports allowing Bloosurf's state-law claims to proceed.  *See* Mot. 19–22.  The savings

clause—as discussed *supra* Part I—preserves only "remedies now existing at common law or by

statute."  47 U.S.C. § 414.  In other words, Section 414's application is limited to (i) remedies;

(ii) for "breaches of duties that are ***not*** created under the Communications Act."  *MCI Telecomms.*

*Corp. v. Garden State Inv. Corp.*, 981 F.2d 385, 387 (8th Cir. 1992) (emphasis added).  In this

case, (i) remedies are not at issue; and (ii) although Bloosurf casts its claims in terms of state law,

it emphasizes that any duty underlying those claims comes from the "FCC's regulations and the

entire concept for spectrum licenses"—*i.e.*, the FCA.  Opp. 28.  In other words, Bloosurf's

"purported state law claims, in actuality, seek recovery for . . . alleged breach of duties imposed

by . . . the Act"—so the savings clause does not apply.  *Firstcom, Inc. v. Qwest Corp.*, 555 F.3d

669, 678 (8th Cir. 2009).  Viewed differently, Bloosurf is trying to "bypass" the sweeping and

highly reticulated nature of the FCA "simply by pleading [its] claims in state common-law terms."

*In re Series 7 Brokerage Qualification Exam Scoring Litig.*, 510 F. Supp. 2d 35, 48–49 (D.D.C.

2007).  That is precisely what the preemption doctrine exists to prevent.  *See id.*

*Johnson*, which Bloosurf cited in its complaint, supports T-Mobile.  *See* Mot. 20–22.  To

be abundantly clear, *Johnson* is a case that ***found FCA preemption***.  The Fourth Circuit held that

the FCA—including its interference provision, 47 U.S.C. § 333—preempts state-law claims that

would "obstruct or burden a wireless service provider's ability to provide coverage."  781 F.3d at

9

707–08.  Understandably unhappy with that clear holding, Bloosurf attempts to distinguish the "preemption analysis in *Johnson*."  Opp. 18–19.  Setting aside the oddity of Bloosurf now trying to distance itself from a case that it affirmatively cited in its complaint, *see* Compl. ¶¶ 174–175, its efforts fail.

Bloosurf initially contends (at 18) that *Johnson* "relied on the fact that the defendants were not common carriers and could not be sued" under the FCA.  This contention is devoid of any citation to *Johnson*—and for good reason:  Bloosurf is wrong twice over.  For one thing, *Johnson* involved two sets of defendants—some common carriers, some not—and found the claims against both were preempted.  781 F.3d at 707–09.  For another, nothing in the Fourth Circuit's conflict preemption analysis hinged on any particular defendant's lack of common-carrier status.  *See id.* at 705–09; *cf.* Opp. 19 (claiming distinction was "tacit").

Bloosurf next claims (at 19) that *Johnson* is distinguishable because none of its "Maryland state law claims . . . imposes a duty greater than the FCA."  Even if this were true, it would be irrelevant.  FCA preemption applies where a "complaint, although fashioned in terms of state law actions, actually challenges . . . an area specifically reserved to federal regulation."  *Bastien v. AT&T Wireless Servs.*, 205 F.3d 983, 990 (7th Cir. 2000).  Spectrum interference is one such area—a point Bloosurf does not dispute.

## IV.   PLAINTIFF FAILS TO STATE A SECTION 333 CLAIM.

Bloosurf's Section 333 claim also is barred by:  (i) the FCA's election-of-remedies provision, because Bloosurf already brought the same allegations to the FCC; and (ii) the statute of limitations, because Bloosurf filed this case more than two years after the alleged interference.  *See* Mot. 23–25.  None of Bloosurf's contrary arguments have merit.

The FCA provides that a person claiming damage by a common carrier may "either make [a] complaint to the Commission . . . or . . . bring suit for the recovery of the damages."  47 U.S.C.

§ 207.  "[B]ut," the provision continues, "such person shall not have the right to pursue both such remedies."  *Id.*  Accordingly, because Bloosurf elected to file an FCC complaint, the election-of-remedies provision bars this lawsuit.

Though Bloosurf concedes (at 20–21) that Section 207 is unambiguous, it appears to be reading an entirely different statute from the one in the U.S. Code.  According to Bloosurf, because it chose not to seek damages in the FCC action, Section 207 does not apply here because the statute is "clearly meant to preclude double recovery of damages."  Opp. 20–21.  But those words appear nowhere in the provision and Bloosurf cites no authority supporting such an interpretation.  And Bloosurf is wrong:  Section 207 does not hinge on the relief sought but rather bars a plaintiff from relitigating the "same issues" before the FCC and in federal court, in order to "prevent[] 'duplicative adjudications and inconsistent results.'"  *Premier Network Servs., Inc. v. SBC Commc'ns, Inc.*, 440 F.3d 683, 688 (5th Cir. 2006).  Bloosurf's sole authority interpreting Section 207 is not to the contrary.  *See In re Mocatta Metals Corp.*, 44 F.C.C.2d 605, 607 (1973) (plaintiff may not litigate "same claim" in both fora).  Notably, while Bloosurf expends significant energy parsing the "context" of its FCC complaint and the "relief" sought therein, Opp. 21–22, it does not meaningfully dispute that the issues on which it continues to seek relief from the FCC are substantively identical to those on which it seeks relief from this Court.

Bloosurf's effort to evade the FCA's two-year limitations bar, 47 U.S.C. § 415(b), is similarly unavailing.  Bloosurf does not dispute that it knew or had reason to know about alleged harm due to spectrum interference more than two years before it filed its complaint.  *See* Mot. 24–25; *cf.* Opp. 22–24.  As such, Bloosurf needs some workaround to the statute of limitations to be able to pursue its FCA claim.

In search of one, Bloosurf initially asserts (at 23–24) that the FCA's limitations period "only applies to the filing of claims before the FCC." But although Section 415(b) "expressly refers only to complaints before the FCC, courts have consistently held that this statute of limitations applies equally to actions in district court." *APCC Servs., Inc. v. WorldCom, Inc.*, 305 F. Supp. 2d 1, 10 (D.D.C. 2001) (citing cases). T-Mobile made this point in its opening brief (at 24), and Bloosurf cites no case holding otherwise.

Next, Bloosurf contends (at 22–24) that the two-year limitations period was tolled by the "continuing violations" doctrine. Bloosurf's own allegations refute that contention. "A continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation." *Nat'l Advert. Co. v. City of Raleigh*, 947 F.2d 1158, 1166 (4th Cir. 1991) (declining to apply the doctrine). Further, the plaintiff must "identify acts or omissions within the statutory limitation period that are a component of the . . . claim." *DePaola v. Clarke*, 884 F.3d 481, 487 (4th Cir. 2018). Bloosurf alleges that, by "the last part of 2020 and the first half of 2021," the "totality of the[] acts [of interference] caused [its] service to collapse." Compl. ¶ 98. In other words, under Bloosurf's own framing, its interference claim was fully ripe—*i.e.*, both the challenged conduct and the asserted harm had occurred—at least three years before it filed its complaint in April 2024. Nor is Bloosurf helped by its claim that the interference "has never ceased for three and a half years." Opp. 23. Where "any harm to the plaintiff stemmed only from the initial" challenged conduct, the Fourth Circuit "ha[s] found no continuing violation." *Nat'l Advertising*, 947 F.2d at 1167. The "'continuing wrong theory' should not provide a means of relieving a plaintiff from its duty of reasonable diligence in pursuing its claims." *Id.* at 1168.[3]

---

[3] Bloosurf's is flat wrong in asserting (at 24) that *Capital Tel. Co. v. FCC*, 777 F.2d 868 (2d Cir. 1985), "found" conduct "similar" to that alleged here subject to the continuing violations doctrine. The court in that case expressly "decline[d]" to rule on the limitations issue—and, in any event, the case did not involve interference. *Id.* at 869, 871.

## V.    PLAINTIFF FAILS TO STATE CLAIMS FOR TORTIOUS INTERFERENCE.

Bloosurf acknowledges (at 25–28) that, to state its tortious interference claims, it must show "unlawful" or "wrongful" conduct committed through "improper means."  But neither its allegations concerning T-Mobile's negotiations with the Schools nor those concerning spectrum interference meet that standard.  *See* Mot. 25–28.  Rather than undermine this conclusion, Bloosurf's opposition only reinforces it.

*First*, any claim premised on the Schools declining to renew the Lease Agreement fails as a matter of law because—as Bloosurf seems to concede—the Lease Agreement places the renewal decision within the Schools' "unilateral" discretion.   Dkt. 1-1 § 1(b); *see* Compl. ¶ 181 ("terminable at will"); *see also* Mot. 26–27.  "Where the decision whether to terminate or continue a contract with the plaintiff rests solely in the discretion of the third party, it is not improper or wrongful conduct for one in competition with the plaintiff to provide that third party with a reason for exercising [its] discretion."  *Macklin v. Robert Logan Assocs.*, 639 A.2d 112, 120 (Md. 1994).  Bloosurf fails entirely to address this point, which T-Mobile made in its opening brief (at 27).

*Second*, as T-Mobile has explained, alleged spectrum interference likewise fails to constitute "conduct that is independently wrongful or unlawful."  *Alexander & Alexander Inc. v. B. Dixon Evander & Assocs., Inc.*, 650 A.2d 260, 271 (Md. 1994); *see also* Mot. 26.  Seeking any way to shoehorn spectrum interference into that standard, Bloosurf claims that T-Mobile's alleged "concealment" of the source of the interference constitutes an "injurious falsehood."  Opp. 26 (citing *Alexander & Alexander*, 650 A.2d at 271).  But—as the plain words of the phrase suggest— an "injurious falsehood" does not involve concealment; rather, the standard requires, *inter alia*, "publishing a known falsity."  *EndoSurg Med., Inc. v. EndoMaster Med., Inc.*, 71 F. Supp. 3d 525, 544 (D. Md. 2014).  Bloosurf identifies no conduct remotely approaching that standard.

## VI.     PLAINTIFF FAILS TO STATE A CLAIM FOR NEGLIGENCE.

"Where the failure to exercise due care creates a risk of economic loss only, courts have generally required an intimate nexus between the parties as a condition to the imposition of tort liability." *Jacques v. First Nat'l Bank of Md.*, 515 A.2d 756, 759 (Md. 1986).   Bloosurf's negligence claim is premised on economic loss, *see* Compl. ¶¶ 237–240, but it fails entirely to show any intimate nexus between the parties as would be required to support a tort duty.   Its negligence claim accordingly should be dismissed.  *See* Mot. 28–29.

In trying to save its claim, Bloosurf only reinforces why this case should be before the FCC.   Bloosurf asserts (at 28) that there would be "absolute bedlam if media competitors could interfere with each other's signal without any means of legal recourse."   Maybe so—but that is why "common carrier[s] . . . are heavily regulated by the FCC," Opp. 19, the agency "Congress has given . . . the responsibility to regulate . . . the telecommunications industry," *Nuvio Corp. v. FCC*, 473 F.3d 302, 307 (D.C. Cir. 2006).   And that is why Bloosurf initially brought—and continues to bring—its interference allegations before the Commission.  *See* Ex. 7 at 4 (Bloosurf FCC complaint) (addressing "interference" is [o]ne of the Commission's core missions"); Ex. 13.

Likewise unavailing is Bloosurf's attempt (at 29) to craft an (un-pleaded) negligence *per se* claim out of an alleged violation of the FCA.   Where, as here, the federal regulatory "scheme established by Congress" is a "critical element" of the plaintiff's tort claim, "it is therefore pre-empted by that scheme." *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 353 (2001); *see also supra* Part III.   Any "detailed parsing" of T-Mobile's conduct to determine if it "met the degree of care and skill which a reasonable . . . telecommunications carrier would have exercised would draw this Court into territory more properly tread by the FCC."   *MCI Telecomms., Inc. v. T.A. Commc'ns, Inc.*, 40 F. Supp. 2d 728, 736 (D. Md. 1999).   Tellingly, Bloosurf does not cite any case allowing a negligence *per se* claim to be premised on a violation of the FCA.

## VII.   PLAINTIFF FAILS TO STATE A PRIVATE NUISANCE CLAIM.

As T-Mobile's opening brief explained (at 29), Bloosurf's private nuisance claim fails because such claims are limited to alleged interference with ***real*** property.  Faced with that fundamental principle, Bloosurf's response is simply to cite (at 30) more cases involving real property.[4]  Bloosurf simply underscores why this claim should be dismissed.

## VIII.   PLAINTIFF'S DAMAGES REQUEST FAILS BASIC PLEADING RULES.

Bloosurf still cites no authority—from anywhere, let alone Maryland—supporting the "special multiplier" underlying its exorbitant $116 million damages request.  Mot. 30.  Its damages request is therefore facially implausible and should be dismissed.  *Howlette v. Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C.*, 2011 WL 310264, at *3 n.4 (D. Md. Jan. 28, 2011) (identifying plaintiff's failure to establish a "reasonable basis for the amount of claimed damages" as "deficienc[y]" supporting dismissal of complaint).

## <u>CONCLUSION</u>

For the foregoing reasons and those stated in Defendants' opening brief, the complaint should be dismissed with prejudice.

---

[4] *Gorman v. Sabo*, 210 Md. 155, 159 (1956); *Sumby v. Jackson*, 2021 WL 916222, at *1 (Md. Ct. Spec. App. Mar. 9, 2021); *United Food & Commercial Workers Int'l Union v. Wal-Mart Stores, Inc.*, 228 Md. App. 203, 210–11, 231 (2016).

Dated:  August 2, 2024                          Respectfully submitted,


  /s/ *Jessica Bodger Rydstrom*
Kenneth J. Brown (*pro hac vice*)
R. Kennon Poteat III (*pro hac vice*)
Jessica Bodger Rydstrom (Bar No. 20692)
William I. Stewart (*pro hac vice*)
Teresa M. Wogoman (*pro hac vice*)
WILLIAMS & CONNOLLY LLP
680 Maine Avenue SW
Washington, DC 20024
Telephone: (202) 434-5000
Facsimile: (202) 434-5029
kbrown@wc.com
kpoteat@wc.com
jrydstrom@wc.com
wstewart@wc.com
twogoman@wc.com

*Attorneys for T-Mobile USA, Inc. and TDI*
*Acquisition Sub, LLC*