IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

BLOOSURF, LLC,               *

    *Plaintiff*,          *

    v.            *      Civil Action No. RDB-24-1047

T-MOBILE USA, INC. and TDI    *
ACQUISITION SUB, LLC,

                *

    *Defendants*.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

On April 10, 2024, Plaintiff Bloosurf, LLC—a Delaware limited liability company that "provides high speed internet to businesses and residents in rural areas on the Delmarva peninsula in Maryland, Delaware, and Virginia"—initiated the instant litigation, filing a six-count Complaint (ECF No. 1)[1] in this Court against T-Mobile USA, Inc. ("T-Mobile") and its subsidiary TDI Acquisition Sub, LLC ("TDI") (collectively, "Defendants") related to Defendants' alleged interference with Bloosurf's wireless network and business relationships. Presently pending in the above-captioned case are two motions: (1) Defendants' Motion to Dismiss for Lack of Jurisdiction and Failure to State a Claim (ECF No. 23); and (2) Plaintiff's Motion for Leave to Amend Complaint (ECF No. 29). Both motions are fully briefed. (*See* ECF Nos. 26, 28, 32, 35.) The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2023). For the reasons that follow, Plaintiff's Motion

---

[1] For clarity, this Memorandum Opinion cites to the ECF generated page number, rather than the page number at the bottom of the parties' various submissions, unless otherwise indicated. Likewise, this Memorandum Opinion cites to the ECF generated document number, rather than the exhibit number provided by the parties' various submissions.

for Leave to Amend Complaint (ECF No. 29) is GRANTED; and the Defendants' Motion to Dismiss for Lack of Jurisdiction and Failure to State a Claim (ECF No. 23), which the Court construes as if directed to the amended pleading (ECF No. 29-2), is GRANTED.

## BACKGROUND

### I.    Background on the Parties

Plaintiff Bloosurf, LLC is a Delaware limited liability company with its principal place of business in Salisbury, Maryland, and none of its members being citizens of Delaware. (ECF Nos. 1 ¶¶ 1, 6; 29-2 ¶¶ 1, 6.) Incorporated in 2009, Bloosurf provides highspeed internet to businesses and residents on the Delmarva peninsula (i.e., the peninsula extending southward between the Chesapeake Bay to the west and the Delaware River, Delaware Bay, and Atlantic Ocean to the east, encompassing parts of Delaware, Maryland, and Virginia). (ECF Nos. 1 ¶ 8; 29-2 ¶ 8.)

Defendant T-Mobile USA, Inc. is a Delaware corporation with its principal place of business in Bellevue, Washington. (ECF Nos. 1 ¶ 2; 29-2 ¶ 2.) T-Mobile is a national telecommunications provider. (ECF Nos. 1 ¶ 2; 29-2 ¶ 2.) Defendant TDI Acquisition Sub, LLC is a Delaware limited liability company with its principal place of business in Overland Park, Kansas. (ECF Nos. 1 ¶ 3; 29-2 ¶ 3.) TDI is a wholly owned subsidiary of T-Mobile, which uses TDI "to bid on and own spectrum licenses in the State of Maryland." (ECF Nos. 1 ¶ 3; 29-2 ¶ 3.)

### II.    Factual Background

#### A. The EBS Lease Agreement Between Bloosurf and UMES, Salisbury University, and Wor-Wic

In 2011, Plaintiff Bloosurf and three institutes of higher education located on

Maryland's Eastern Shore—the University of Maryland Eastern Shore ("UMES"), Salisbury University, and Wor-Wic Community College ("Wor-Wic") (collectively, the "Schools" or "Licensees")—entered into an Educational Broadband Service Long-Term *De Facto* Lease Agreement (the "EBS Lease Agreement" or "Lease"), granting Bloosurf access to the Schools' Federal Communications Commission ("FCC")-approved Educational Broadcast Service ("EBS")[2] licenses (the "Licenses") for its wireless network. (ECF Nos. 1-1; 29-3.) Under the Lease, Bloosurf pays the Schools a fee in exchange for the right to lease the capacity of the Schools' EBS. (ECF Nos. 1-1; 29-3.)

The EBS Lease Agreement authorized an initial term of ten years and then two ten-year renewal periods, making the total possible life of the Lease thirty years. (ECF Nos. 1-1 § 1(a), (b); 29-3 § 1(a), (b).) The initial term began on April 5, 2011[3] (the "Commencement Date")—that is, the date when the FCC issued a public notice that the last of the three lease applications submitted by UMES, Salisbury University, and Wor-Wic had been granted. (ECF Nos. 1-2; 1-3; 29-4; 29-5.)

While the original ten-year Lease term began in April 2011, the term of the Licenses—which must be renewed with the FCC every ten years—were set to expire in 2014. (ECF Nos. 1 ¶ 23; 1-2; 1-3; 29-2 ¶ 23; 29-4; 29-5.) The Lease anticipated possible inconsistencies between

---

[2]  The spectrum is known as the "Educational Broadband Service" because it was originally "designated by the [FCC] for educational purposes by educational institutions." (ECF Nos. 1 ¶ 9; 29-2 ¶ 9.) However, FCC rule changes, effective April 27, 2020, now permit EBS licenses also to be held by for-profit and non-educational entities. *In re Transforming the 2.5 GHz Band*, 34 FCC Rcd. 5446 (2019).

[3]  The Complaint and proposed Amended Complaint inconsistently reference the Lease's Commencement Date, sometimes referencing April 5, 2011, and elsewhere referencing April 13, 2011. (*Compare* ECF Nos. 1 ¶¶ 19, 20, 21;  29-2 ¶¶ 19, 20, 21 (listing April 13, 2011) *with* ECF Nos. 1 ¶¶ 22, 26; 29-2 ¶¶ 22, 26 (listing April 5, 2011). Nevertheless, the exhibits attached to both filings—namely Exhibits B and C (ECF Nos. 1-2; 1-3; 29-4; 29-5)—make clear that the Lease's Commencement Date was April 5, 2011.

the Lease and EBS Licenses terms.  Firstly, Section 1(c) of the Lease provides that:

> In the event that a License expires during the Initial Term and/or any Renewal Term, this Agreement will also expire at such time with respect to such License unless such License is renewed and FCC authorization for this Agreement with respect to such License is expended.  Licensee and Bloosurf will cooperate to timely file a renewal application for each License, in conjunction with a request for an extension of the then-applicable Initial Term or Renewal Term, to the date that is ten (10) years from the beginning of such Initial Term or Renewal Term.  This Agreement will continue to apply to each License unless the FCC denies by Final Order any application for renewal of the License or extension of the Term with respect to the License. . . .

(ECF Nos. 1-1 § 1(c); 29-3 § 1(c).)  Section 6(a) provides, in relevant part: "The Parties further covenant and agree to include in any renewal application for the Licenses, or separately request, as necessary, a request to extend and renew this Agreement for the renewal term of the Licenses, if this Agreement contemplates renewal of this Agreement for or during any part of the renewal term for such Licenses."  (ECF Nos. 1-1 § 6(a); 29-3 § 6(a).)  Further, Section 8(a) provides that:

> This Agreement will automatically terminate with respect to a License or affected Channel(s) upon the earlier of: (i) an FCC Final Order denying application for approval of this Agreement with respect to such License including any extensions of the term thereof; (ii) the loss or expiration without renewal of such License; (iii) an FCC Final Order revoking, terminating, or cancelling such License; or (iv) Bloosurf's acquisition of such License or some of the Channels pursuant to an agreement between Bloosurf and Licensee.

(ECF Nos. 1-1 § 8(a); 29-3 § 8(a).)

Consistent with these provisions, when the term of the Licenses were set to expire during the Lease's Initial Term in 2014, the Schools applied to renew the Licenses, and the FCC subsequently renewed the Licenses for ten years—that is, until September 7, 2024 for the licenses held by UMES and Salisbury University, and until October 12, 2024, for the license held by Wor-Wic.  (ECF Nos. 1 ¶ 24; 29-2 ¶ 24.)  The parties to the instant dispute—

that is, T-Mobile, TDI, and Bloosurf—disagree as to the consequence this License renewal had on the Lease.[4]  Nevertheless, the parties essentially agree that, if the parties to the EBS Lease failed to renew the Licenses through an application to the FCC, the Lease would terminate.[5]  (*See* ECF Nos. 26 at 9–10; 28 at 7–8.)  Indeed, this is consistent with 47 C.F.R. § 1.9030(a), which provides, in relevant part, that: "[t]he term of a long-tern *de facto* transfer leasing agreement may be no longer than the term of the license authorization."

Also relevant to the instant dispute is Subsection 1(b) of the Lease, entitled "Renewal." (ECF Nos. 1-1 § 1(b); 29-3 § 1(b).)  As noted, the Lease authorized an initial term of ten years and then two ten-year renewal periods ("Renewal Terms"), making the total possible life of the Lease thirty years.  (ECF Nos. 1-1 § 1(a), (b); 29-3 § 1(a), (b).)  "The Renewal Terms will occur when Licensees notify Bloosurf of each Licensee's unilateral determination to renew." (ECF Nos. 1-1 § 1(b); 29-3 § 1(b).)

Lastly, Section 7 of the Lease, entitled "Transfers or Assignments," contemplates that "neither Bloosurf nor any Licensee may assign or transfer its rights and/or obligations under this Agreement without the prior written consent of the other Party, such consent not to be

---

[4]  In brief, Defendants suggest that "from that point forward, the Lease Agreement was set to expire in fall 2024, absent an extension." (ECF No. 23-1 at 13.)  Bloosurf, in turn, argues that the expiration of the Initial Term remained the same—that is, ten years from the Commencement Date of April 5, 2011. (ECF No. 26 at 9–10.)  Because this dispute is inconsequential to the matter chiefly before this Court, the Court need not address the merits of either position.

[5]  As the proposed Amended Complaint (ECF No. 29-2 ¶¶ 134–159) makes clear, in mid-August 2024, shortly after the Schools notified Bloosurf that it would not be filing to renew the FCC authorization of the Lease, Bloosurf filed a breach of contract action in the Circuit Court for Wicomico County seeking specific performance of the Lease.  (*Id.* ¶¶ 147–151 (citing ECF Nos. 29-16; 29-17).)  Bloosurf further requested that the court preliminarily enjoin the Schools to file the renewal request with the FCC, which following a hearing on August 30, 2024, the state court granted.  (*Id.* ¶¶ 152–155 (citing ECF Nos. 29-18; 29-19).)  In other words, while the Schools had not filed renewal applications with the FCC at the time the original Complaint was filed, the Circuit Court for Wicomico County compelled the Schools to file the applications with the FCC, (ECF No. 29-18), and the Schools subsequently did just that.  (*See* ECF Nos. 32-1 (showing Wor-Wic's application for was granted); 32-2 (same for Salisbury University); 32-3 (same for UMES).)

unreasonably withheld, conditioned, or delayed." (ECF Nos. 1-1 § 7; 29-3 § 7.)

**B. Bloosurf's Utilization of the EBS and Receipt of State and Federal Funds Based on the Lease Agreement**

Bloosurf operates twenty "4G-LTE"[6] sites[7] running on the EBS spectrum on the Delmarva peninsula, which offer high-speed internet through its fixed wireless access[8] ("FWA") design. (ECF Nos. 1 ¶ 29; 29-2 ¶ 9.) At its peak in December 2020, Bloosurf served more than 1,200 households of a potential user population of 10,000 households on the Delmarva peninsula. (ECF Nos. 1 ¶¶ 30, 30 n.7, 34; 29-2 ¶¶ 30, 30 n.7, 34.) It now serves only 600 households. (ECF Nos. 1 ¶ 31; 29-2 ¶ 31.)

"Since entering into the Lease Agreement [in 2011], Bloosurf has successfully received several state and federal government grants and contracts based on the use of Bloosurf's EBS spectrum, expanding the use of the spectrum from solely residential to commercial uses, with a focus on low-cost, high-speed internet to rural and low incomes households." (ECF Nos. 1 ¶ 32; 29-2 ¶ 32.) Such grants and contracts include:

> A 2010 grant/loan of $3.2 million through the United States Department of Agriculture ("USDA") Rural Utilities Services, Broadband Infrastructure Program;
>
> A 2017 grant of $100,000 to pilot the State of Delaware's 4G FWA network from a Delaware state tower located in Seaford, Delaware;

---

[6] Plaintiff's Complaint and Amended Complaint explain that:
> 4G LTE refers to a certain type of cellular signal under the "Long Term Evolution" fourth generation of network technology set by the International Telecommunications Unit in 2008. 4G is the general standard of signal emitted for telecommunications services and refers to radio waves emitting frequencies below 6GHz transmitted from traditional cell towers.

(ECF Nos. 1 ¶ 29 n.5; 29-2 ¶ 29 n.5.)

[7] That is, Bloosurf operates six 4G-LTE sites in Delaware, thirteen in Maryland, and one in Virginia. (ECF Nos. 1 ¶ 29; 29-2 ¶ 29.)

[8] "FWA uses wireless communication devices to transmit internet data between two stationary points instead of using a physical internet cable." (ECF Nos. 1 ¶ 29 n.6; 29-2 ¶ 29 n.6.) Bloosurf explains FWA is "sensitiv[e] to frequency 'pollution.'" (ECF Nos. 1 ¶ 29 n.6; 29-2 ¶ 29 n.6.)

A 2018 grant from the FCC of approximately $5.5 million from the FCC's "Connect America Fund Phase 2" ("CAF 2") for 10 years;

A 2019 contract with the State of Delaware to provide wireless internet services in Kent and Sussex County for a span of 7 years; and

Various work orders from the State of Delaware to accelerate Bloosurf's deployment in order to increase at-home connectivity for public school students during the COVID-19 pandemic.

(collectively, the "Government Grants") (ECF Nos. 1 ¶ 33; 29-2 ¶ 33.)

### C.  The Alleged Spectrum Interference

Bloosurf alleges that, beginning in late 2020, it began experiencing significant interference with its broadband service in the area covered by the EBS Licenses.  (ECF Nos. 1 ¶¶ 46–106; 29-2 ¶¶ 46–106.)  Plaintiff alleges that, on or around January 22, 2021, Bloosurf requested T-Mobile's cooperation to find the source of the interference, as T-Mobile owned neighboring towers and frequencies.   (ECF Nos. 1 ¶ 49; 29-2 ¶ 49.)    And so, in early February 2021, Bloosurf and T-Mobile conducted joint testing to try and determine the source of the interference.  (ECF Nos. 1 ¶¶ 51, 57; 29-2 ¶¶ 51, 57.)  Among other things, Bloosurf alleges that T-Mobile did not disclose all relevant towers to Bloosurf, nor did it turn off all towers at the correct times so as to verify that T-Mobile's operations were not the source of the interference.  (ECF Nos. 1 ¶¶ 50–61; 29-2 ¶¶ 50–61.)

After the joint testing failed to reveal the source of the alleged spectrum interference, Bloosurf sought the assistance of the FCC's Enforcement Bureau to investigate the interference ("FCC's 2021 Investigation").  (ECF Nos. 1 ¶ 59; 29-2 ¶ 59.)  In general, Bloosurf characterizes T-Mobile as uncooperative during the FCC's 2021 Investigation of the interference.  (ECF Nos. 1 ¶¶ 59–78; 29-2 ¶¶ 59–78.)

Plaintiff alleges that, on or around May 28, 2021, the FCC concluded that the

interference with Bloosurf's signal was caused by T-Mobile. (ECF Nos. 1 ¶ 63 (citing ECF No. 1-16); 29-2 ¶ 63 (citing ECF No. 29-7).) According to Bloosurf, "the FCC found that T-Mobile had been transmitting outside of its allotted frequency band" and that "T-Mobile's 4G transmission was way too 'loud' by twenty (20) decibels." (ECF Nos. 1 ¶ 64; 29-2 ¶ 64.) "[T]he FCC ordered T-Mobile to (i) audit its towers that neighbored Bloosurf's coverage area regarding its transmission frequency and (ii) report its findings to FCC officials." (ECF Nos. 1 ¶ 66 (citing ECF No. 1-16); 29-2 ¶ 66 (citing ECF No. 29-7).) According to Bloosurf, T-Mobile's interference persisted (and continues) due to Defendants' refusal to correct the "bleed" into the EBS frequencies, as well as another reason hidden from Plaintiff and the FCC during the FCC's 2021 Investigation—the late 2020 rollout of T-Mobile's 5G network. (ECF Nos. 1 ¶¶ 46–106; 29-2 ¶¶ 46–106.)

### D. T-Mobile's 5G Deployment in Late 2020

According to Bloosurf, Bloosurf and Sprint—who previously owned T-Mobile's towers on the Delmarva peninsula—agreed to both use "subframe 2" as a mutually compatible "subframe" configuration to avoid the risk of interference. (ECF Nos. 1 ¶¶ 82–83; 29-2 ¶ 82–83.) Bloosurf explains that subframe configurations "synchronize the timing of neighboring towers' uplinking and downlinking with their customers' devices," and that towers out of synch with one another interfere with each other's connectivity. (ECF Nos. 1 ¶ 82 n.13; 29-2 ¶ 82 n.13.)

Bloosurf alleges that, prior to December 2020, and without any notification to Bloosurf, T-Mobile deployed its new 5G network to many towers surrounding Bloosurf's coverage area and changed its special configuration to "special subframe 7" to mitigate

interference by the 5G network with Defendants' own existing 4G network. (ECF Nos. 1 ¶¶ 68–95 (citing ECF No. 1-16); 29-2 ¶¶ 68–95 (citing ECF No. 29-7).) According to Bloosurf, Defendant "transmit[ed] 5G signals within Bloosurf's geographic coverage area with full knowledge it would interfere with Bloosurf's existing 4G coverage," and "exacerbated by the problem by deploying its 5G network without any notice to Bloosurf." (ECF Nos. 1 ¶¶ 96–97; 29-2 ¶¶ 96–97.) Bloosurf alleges that T-Mobile interfered with its coverage in an "attempt[] to eliminate Bloosurf as a rival in the broadband market on the Eastern Shore, thus freeing up Bloosurf's EBS frequencies for lease or auction and claiming a wider hold on the region's spectrum." (ECF Nos. 1 ¶ 104; 29-2 ¶ 104.)

### E. Asset Purchase Agreement Between Defendants and the Schools

As noted *supra*, the EBS was known as the "Educational Broadband Service" because it was originally "designated by the [FCC] for educational purposes by educational institutions." (ECF Nos. 1 ¶ 9; 29-2 ¶ 9.) However, FCC rule changes effective April 27, 2020 now permit EBS licenses also to be held by for-profit and non-educational entities. *In re Transforming the 2.5 GHz Band*, 34 FCC Rcd. 5446 (2019). In other words, commercial entities—like Bloosurf and T-Mobile—may now directly hold EBS licenses.

In light of this change, on January 25, 2022, T-Mobile and the Schools entered into an "Asset Purchase Agreement," wherein TDI agreed to purchase the School's EBS Licenses. (ECF Nos. 1-8; 29-11.) The Asset Purchase Agreement was expressly conditioned on Bloosurf's acknowledging that the Lease Agreement terminated in 2024. Section 1 provided that transfer of the Licenses was "subject to the conditions outlined in this Agreement . . . and the consent to assignment of the licenses by Bloosurf, including the consent by Bloosurf to

the Bloosurf Lease termination date ('Bloosurf Consent')." (ECF Nos. 1-8 § 1; 29-11 § 1.) And Section 7(b) provided that "[T-Mobile's] obligation to close shall be subject to the satisfaction of," *inter alia*, "receipt of the Bloosurf Consent" and "Bloosurf's consent to the Bloosurf Lease end date as outlined in the Bloosurf Consent." (ECF Nos. 1-8 § 7(b); 29-11 § 7(b).) The referenced "Bloosurf Consent" required Bloosurf to "consent[] to the assignment of the Lease" to T-Mobile and to "confirm[] that the Lease is valid and effective until the expiration date of the Licensees' licenses . . . [on] September 7, 2024 . . . and October 12, 2024." (ECF Nos. 1-6; 29-9.)

And so, on January 27, 2022, Bloosurf received a joint letter from the Schools asking Bloosurf to consent to the sale of the EBS Licenses to TDI. (ECF Nos. 1 ¶ 114 (citing ECF No. 1-6); 29-2 ¶ 114 (citing ECF No. 29-9).) Plaintiff alleges that, since receiving that joint letter and pursuant to Section 7 of the Lease Agreement, Bloosurf has refused to consent to the assignment of the Lease "due to the impact such a change would have on its business and its negative history with T-Mobile[.]" (ECF Nos. 1 ¶ 116; 29-2 ¶ 116.) Ultimately, the Schools issued a "Notice of Default" to Bloosurf on November 17, 2022. (ECF Nos. 1 ¶ 128 (citing ECF No. 1-9); 29-2 ¶ 128 (citing ECF No. 29-12).)

### F. Bloosurf's November 2022 Informal Complaint with FCC

While not mentioned in the Plaintiff's pleadings[9] (ECF Nos. 1; 29-2), on

---

[9] When deciding a motion to dismiss under Rule 12(b)(6), the court does not consider extrinsic evidence. The court may consider however, documents attached to the complaint as exhibits, and documents attached to a motion to dismiss if the documents are integral to the complaint and there is no dispute about the documents' authenticity. *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Because Bloosurf's complaint specifically references the FCC's investigation of the alleged interference, the Court find the documents attached to Defendants' Motion to Dismiss pertaining to the 2022 Informal Complaint to be integral to the complaint, and because Bloosurf does not challenge the documents' authenticity, the court considers the contents.

November 21, 2022, Bloosurf wrote to the FCC requesting that the Commission "investigate the operations of T-Mobile . . . and all related subsidiary companies . . . in connection with T-Mobile's operations in and around Bloosurf's authorized service area in Maryland, Virginia, and Delaware" (the "2022 Informal Complaint").  (ECF No. 23-9.)  In brief, the 2022 Informal Complaint asserted that T-Mobile was interfering with Bloosurf's wireless signals, and requested that the FCC stay or condition the approval of T-Mobile's further acquisition of additional EBS licenses.  (*Id.*)

Ultimately, the FCC declined to act on Bloosurf's request, finding Bloosurf's request was untimely to the extent that it sought license conditions on certain licenses T-Mobile had won at an agency auction ("Auction 108"), as Bloosurf filed its request on November 21, 2022 and the deadline for such requests was November 7, 2022.  (ECF No. 23-15); *see also In re T-Mobile License LLC Application for 2.5 GHz Band Licenses, Auction No. 108*, 2024 WL 835192, at *4 n.54 (FCC Feb. 27, 2024).  On March 28, 2024, Bloosurf appealed the FCC's decision.  (ECF No. 23-15.)  That appeal appears to remain pending.

### G. Bloosurf's Prior Litigation Against the Schools

Unsurprisingly, the relationship between the Schools and Bloosurf continued to sour, with Bloosurf filing litigation against the Schools in this Court on December 16, 2022.  *See* Compl., *Bloosurf, LLC v. Univ. of Md. E. Shore*, No. RDB-22-3254 (D. Md. Dec. 16, 2022), ECF No. 1.  In brief, Bloosurf, invoking this Court's federal question jurisdiction, sought to enjoin the transfer of the Licenses to T-Mobile.  *See id.*; *see also* Emergency Mot. for Prelim. Inj., *Bloosurf, LLC v. Univ. of Md. E. Shore*, No. RDB-22-3254 (D. Md. Dec. 20, 2022), ECF No. 9.  On July 21, 2023, this Court dismissed Bloosurf's complaint without prejudice, explaining that

"Bloosurf's claims for injunctive and declaratory relief [against the Schools did] not 'necessarily raise' issues of federal law," and as such the "case [fell] outside the ambit of this court's subject matter jurisdiction" under 28 U.S.C. § 1331.  Mem. Op. & Order, *Bloosurf, LLC v. Univ. of Md. E. Shore*, No. RDB-22-3254 (D. Md. July 21, 2023), ECF Nos. 40, 41.  Bloosurf subsequently moved for voluntary dismissal without prejudice, indicating it had refiled its complaint in state court in Maryland.  Mot. to Voluntarily Dismiss Claim Without Prejudice, *Bloosurf, LLC v. Univ. of Md. E. Shore*, No. RDB-22-3254 (D. Md. Aug. 18, 2023), ECF No. 42.  And so, on September 1, 2023, this Court granted Bloosurf's motion and dismissed the case against the Schools without prejudice.  Order, *Bloosurf, LLC v. Univ. of Md. E. Shore*, No. RDB-22-3254 (D. Md. Sept. 1, 2023), ECF No. 43.

As noted, Plaintiff refiled its complaint against the Schools in the Circuit Court for Wicomico County in August 2023.  (ECF No. 23-14.)  Nevertheless, the action was subsequently dismissed for lack of jurisdiction or prosecution without prejudice on February 21, 2024.  (ECF Nos. 23-13; 23-14.)

### III.    Procedural History

On April 10, 2024, Plaintiff Bloosurf initiated the instant litigation, invoking this Court's diversity jurisdiction.  (ECF 1 ¶ 5.)  Therein, Bloosurf alleges willful and wanton interference in violation of 47 U.S.C. § 333 against T-Mobile and TDI (*id.* ¶¶ 146–172); tortious interference with a business relationship related to the EBS Lease Agreement against T-Mobile and TDI ( (*id.* ¶¶ 179–194); tortious interference with contractual expectancy related to the Government Grants against T-Mobile (*id.* ¶¶ 195–209); tortious interference with contractual relations and economic expectancy related to Bloosurf's Customers against

T-Mobile (*id.* ¶¶ 210–224); negligence against T-Mobile (*id.* ¶¶ 225–240); and private nuisance against T-Mobile (*id.* ¶¶ 241–249).

On June 5, 2024, Defendants filed the pending Motion to Dismiss for Lack of Jurisdiction and Failure to State a Claim (ECF No. 23). On July 12, 2024, Bloosurf responded in opposition (ECF No. 26), and further requested a hearing on the motion (ECF No. 27). On August 2, 2024, Defendants filed a reply (ECF No. 28).

On October 4, 2024, Plaintiff filed the pending Motion for Leave to Amend Complaint (ECF No. 29), which requests leave to file the proposed Amended Complaint (ECF No. 29-2) and apply the pending Motion to Dismiss (ECF No. 23) to that pleading. (ECF No. 29-1 at 1–4.) In brief, Plaintiff's proposed Amended Complaint (ECF No. 29-2) seeks to add allegations relating to an additional breach of contract action filed August 16, 2024, in the Circuit Court for Wicomico County against the Schools, wherein Bloosurf sought and received injunctive relief to compel the Schools to file renewal applications with the FCC. (*Id.* ¶¶ 134–159.) Bloosurf makes much of the fact that, during the August 30, 2024 hearing on Plaintiff's request for injunction in that case, "T-Mobile also appeared at the hearing, sitting with the Universities' lawyers and a representative from T-Mobile presented testimony to support the Universities' defense that T-Mobile could step in and 'take over' the existing business of Bloosurf." (*Id.* ¶ 154.) According to Plaintiff, these new factual allegations support the claim advanced in Count II, which alleges tortious interference with a business relationship related to the EBS Lease Agreement against T-Mobile and TDI. (ECF No. 29-1 at 2.) Defendants responded in opposition (ECF No. 32), and Bloosurf replied (ECF No. 35). The pending motions (ECF Nos. 23; 29) are ripe for review.

## STANDARD OF REVIEW

### I.    Motions for Leave to Amend Complaint

Rule 15(a) of the Federal Rules of Civil Procedure provides the general framework for amending pleadings.  Specifically, Rule 15(a) provides that, after a response pleading is served, a plaintiff may amend his complaint "by leave of court or by written consent of the adverse party."  In general, leave to amend a complaint pursuant to Rule 15(a) shall be "freely" granted "when justice so requires."  FED. R. CIV. P. 15(a)(2); *see Foman v. Davis*, 371 U.S. 178, 182 (1962); *Lance v. Prince George's Cnty.*, 199 F. Supp. 2d 297, 300–01 (D. Md. 2002).  Nevertheless, the matter is committed to the discretion of the district court, which may deny leave to amend "when the amendment would be prejudicial to the opposing party, the moving party has acted in bad faith, or the amendment would be futile."  *Equal Rts. Ctr. v. Niles Bolton Assocs.*, 602 F.3d 597, 603 (4th Cir. 2010); *see also Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 769 (4th Cir. 2011); *Steinburg v. Chesterfield Cnty. Plan. Comm'n*, 527 F.3d 377, 390 (4th Cir. 2008).

### II.    Motions to Dismiss

#### A.  Pursuant to Rule 12(b)(1)

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges a court's authority to hear the matter brought by a complaint.  *See Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005).  A challenge to jurisdiction under Rule 12(b)(1) may proceed either as a facial challenge, asserting that the allegations in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting "that the jurisdictional allegations of the complaint [are] not true."  *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citation omitted).  In determining jurisdiction, the district court must

14

"regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768–69 (4th Cir. 1991). The plaintiff bears the burden of proving, by a preponderance of the evidence, the existence of subject matter jurisdiction. *Demetres v. E. W. Constr., Inc.*, 776 F.3d 271, 272 (4th Cir. 2015).

### B. Pursuant to Rule 12(b)(6)

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a Complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P 8(a)(2). The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (internal quotations omitted).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (quoting *Bell Atl., Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). A complaint need not include "detailed factual allegations." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A complaint must, however, set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotations omitted). "Threadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim. *Iqbal*, 556 U.S. at 678; *see A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011).

### III.    Applicable Law

With the exception of Count I, all of Bloosurf's claims are state law tort claims, which Plaintiff pursues in this Court on the basis of this Court's alleged diversity jurisdiction. 28 U.S.C. § 1332. "When choosing the applicable state substantive law while exercising diversity or supplemental jurisdiction, a federal district court applies the choice of law rules of the forum state." *Ground Zero Museum Workshop v. Wilson*, 813 F. Supp. 2d 678, 696 (D. Md. 2011); *see Colgan Air, Inc. v. Raytheon Aircraft Co.*, 507 F.3d 270, 275 (4th Cir. 2007); *Baker v. Antwerpen Motorcars, Ltd.*, 807 F. Supp. 2d 386, 389 n.13 (D. Md. 2011). Maryland is the forum state.

In tort actions, Maryland adheres to the rule of *lex loci delicti*, meaning it applies the substantive law of the state where the wrong occurred. *Ben-Joseph v. Mt. Airy Auto Transporters, LLC*, 529 F. Supp. 2d 604, 606 (D. Md. 2008) (citing *Erie Ins. Exch. v. Heffernan*, 925 A.2d 636, 648–49 (Md. 2007); *Lab. Corp. of Am. v. Hood*, 911 A.2d 841, 844 (Md. 2006); *Philip Morris v. Angeletti*, 752 A.2d 200, 230 (Md. 2000)). The parties assume—without discussion—that Maryland law applies; thus the Court assumes it is undisputed that any asserted wrongs occurred in Maryland.[10] Accordingly, this Court shall apply Maryland law to Plaintiff's state law tort claims.

---

[10] Based on the allegations in the Complaint (ECF No. 1) and proposed Amended Complaint (ECF No. 29-2), the Court will assess Plaintiff's claims in tort under Maryland law.

## ANALYSIS

The Court first addresses Plaintiff's Motion (ECF No. 29) before turning to address Defendants' Motion (ECF No. 23). The Court grants Plaintiff's Motion for Leave to Amend Complaint (ECF No. 29), and applies Defendants' Motion to Dismiss for Lack of Jurisdiction and Failure to State a Claim (ECF No. 23) as if directed to the amended pleading (ECF No. 29-2).

### I.     Plaintiff's Motion for Leave to Amend Complaint (ECF No. 29)

In general, leave to amend a complaint pursuant to Rule 15(a) shall be "freely" granted "when justice so requires." FED. R. CIV. P. 15(a)(2); *see Foman v. Davis*, 371 U.S. 178, 182 (1962); *Lance v. Prince George's Cnty.*, 199 F. Supp. 2d 297, 300–01 (D. Md. 2002). Nevertheless, the matter is committed to the discretion of the district court, which may deny leave to amend "when the amendment would be prejudicial to the opposing party, the moving party has acted in bad faith, or the amendment would be futile." *Equal Rts. Ctr. v. Niles Bolton Assocs.*, 602 F.3d 597, 603 (4th Cir. 2010); *see also Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 769 (4th Cir. 2011); *Steinburg v. Chesterfield Cnty. Planning Comm'n*, 527 F.3d 377, 390 (4th Cir. 2008).

Plaintiff's Motion for Leave to Amend Complaint, (ECF No. 29) requests leave to file the proposed Amended Complaint (ECF No. 29-2) and further asks that the Court apply the pending Motion to Dismiss (ECF No. 23) to that pleading. (ECF No. 29-1 at 1–4.) Among other small changes, (*see* ECF No. 29-23), the proposed Amended Complaint (ECF No. 29-2) seeks to add allegations relating to an additional breach of contract action filed August 16, 2024, in the Circuit Court for Wicomico County against the Schools. (*Id.* ¶¶ 134–159.) According to Plaintiff, these new factual allegations support Bloosurf's claim in Count

17

II for tortious interference with a business relationship related to the EBS Lease Agreement. (ECF No. 29-1 at 2.)  To be clear, Bloosurf's Amended Complaint advances the same six claims as the original Complaint—that is, Bloosurf alleges willful and wanton interference in violation of 47 U.S.C. § 333 against T-Mobile and TDI ("Count I of the Amended Complaint") (ECF No. 29-2 ¶¶ 173–199); tortious interference with a business relationship related to the EBS Lease Agreement against T-Mobile and TDI ("Count II of the Amended Complaint") (*id.* ¶¶ 206–222); tortious interference with contractual expectancy related to the Government Grants against T-Mobile ("Count III of the Amended Complaint") (*id.* ¶¶ 223–237); tortious interference with contractual relations and economic expectancy related to Bloosurf's Customers against T-Mobile ("Count IV of the Amended Complaint") (*id.* ¶¶ 238–252); negligence against T-Mobile ("Count V of the Amended Complaint") (*id.* ¶¶ 253–268); and private nuisance against T-Mobile ("Count VI of the Amended Complaint") (*id.* ¶¶ 269–277).

Plaintiff insists its request is appropriate under Fed. R. Civ. P. 15(a)(2).  (ECF No. 29-1 at 1–4; *see also* ECF No. 35 at 5–9.)  According to Bloosurf, the motion is brought in good faith as it was "prompted by events occurring after the initial complaint was filed," that Defendants would suffer no prejudice "as discovery in this case has not yet begun" and the amendment does not add new claims or basis for relief, and the amendment would not be futile "as it serves to supplement facts that support [Count II]."  (ECF No. 29-1 at 2; *see also* ECF No. 35 at 2–9.)

According to Defendants, the Plaintiff's motion should be denied as futile, as nothing in the proposed amendment would enable the court to exercise jurisdiction over the case (ECF

18

No. 32 at 10–12); and the proposed amendment fails to plausibly allege that T-Mobile tortiously induced the Schools to breach the Lease, as Bloosurf has failed to plausibly allege that T-Mobile committed any malicious or wrongful conduct or, via such conduct, induced a breach (*id.* at 12–15).

The primary purpose of the proposed Amended Complaint (ECF No. 29-2) is to advise the Court of Plaintiff's latest litigation against the Schools.  (*Id.* ¶¶ 134–159.)  Bloosurf makes much of the fact that, during the August 30, 2024 hearing on Plaintiff's request for injunction in that case, "T-Mobile also appeared at the hearing, sitting with the Universities' lawyers and a representative from T-Mobile presented testimony to support the Universities' defense that T-Mobile could step in and 'take over' the existing business of Bloosurf."  (*Id.* ¶ 154.)  While Defendants oppose the motion as futile (ECF No. 32 at 10–15), in light of the early posture of this case and the liberality with which amendments are allowed under Rule 15, the Court GRANTS Plaintiff's Motion for Leave to Amend Complaint (ECF No. 29).  The Court proceeds to address Defendants' Motion to Dismiss for Lack of Jurisdiction and Failure to State a Claim (ECF No. 23) as if directed to the amended pleading (ECF No. 29-2).

## II.    Defendants' Motion to Dismiss for Lack of Jurisdiction and Failure to State a Claim (ECF No. 23)

Through the now-operative pleading (ECF No. 29-2), Bloosurf alleges willful and wanton interference in violation of 47 U.S.C. § 333 against T-Mobile and TDI (*id.* ¶¶ 173–199); tortious interference with a business relationship related to the EBS Lease Agreement against T-Mobile and TDI (*id.* ¶¶ 206–222); tortious interference with contractual expectancy related to the Government Grants against T-Mobile (*id.* ¶¶ 223–237); tortious interference with contractual relations and economic expectancy related to Bloosurf's Customers against

T-Mobile (*id.* ¶¶ 238–252); negligence against T-Mobile (*id.* ¶¶ 253–268); and private nuisance against T-Mobile (*id.* ¶¶ 269–277).

Through the pending Motion to Dismiss for Lack of Jurisdiction and Failure to State a Claim (ECF No. 23), Defendants argue that this case should be dismissed in its entirety. Defendants first argue that this action must be dismissed, as the FCC has "exclusive jurisdiction" over the asserted claims. (ECF No. 23-1 at 21–24; *see also* ECF No. 28 at 9–12.) Second, Defendants contend that this case should be dismissed under the doctrine of primary jurisdiction, which allows courts to stay or dismiss a party's claim when it implicates issues within the special competence of an administrative agency, because the FCC has primary jurisdiction over the highly technical spectrum interference issues at the core of Plaintiff's claims. (ECF No. 23-1 at 24–26; *see also* ECF No. 28 at 12–14.) Third, Defendants contend that Bloosurf's state law claims concerning spectrum interference (i.e., Counts II, III, IV, V, and VI) are preempted by the Federal Communications Act ("FCA"), 47 U.S.C. §§ 151–614. (ECF No. 23-1 at 26–29; *see also* ECF No. 28 at 14–16.)

Finally, Defendants raise more traditional 12(b)(6) challenges to each of the Plaintiff's claims. (ECF No. 23-1 at 30–36; *see also* ECF No. 28 at 16–21.) With respect to Count I, Defendants argue that Bloosurf's claim that T-Mobile "willfully or maliciously" interfered with its licensed frequencies under 47 U.S.C. § 333 is barred by the FCA's election of remedies provision, 47 U.S.C. § 207, because Bloosurf already brought the same allegations to the FCC (ECF No. 23-1 at 30–31; *see also* ECF No. 28 at 16–17); and the statute of limitations, because Bloosurf filed this case more than two years after the alleged interference (ECF No. 23-1 at 31–32; *see also* ECF No. 28 at 17–18). With respect to Counts II to IV, Defendants emphasize

that to state claims for tortious interference, a plaintiff must show "unlawful" or "wrongful" conduct committed through "improper means," and that Bloosurf's allegations concerning T-Mobile's negotiations with the Schools and alleged spectrum interference fall woefully short of that standard. (ECF No. 23-1 at 32–35; *see also* ECF No. 28 at 19.) With respect to the negligence claim asserted in Count V, Defendants argue that Bloosurf's allegations are insufficient to establish that Defendants owed a duty of care to Plaintiff. (ECF No. 23-1 at 35–36; *see also* ECF No. 28 at 20.) Lastly, Defendants argue that Bloosurf fails to state a private nuisance claim in Count VI because the claim is based on alleged interference with wireless spectrum, not real property. (ECF No. 23-1 at 36; *see also* ECF No. 28 at 21.) Lastly, Defendants contend that Bloosurf's claim for $116 million in damages fails basic pleading rules. (ECF No. 23-1 at 37; *see also* ECF No. 28 at 21.)

Bloosurf opposes Defendants' motion to dismiss at every turn. (ECF No. 26.) With respect to Defendants' Rule 12(b)(1) challenge, Bloosurf insists that this Court has jurisdiction. (*Id.* at 18–22). With respect to Defendants' invocation of the doctrine of primary jurisdiction, Bloosurf contends that primary jurisdiction is inapplicable to the instant litigation (*id.* at 22–24), but even if it were, referral to the FCC—not dismissal—is the proper remedy (*id.* at 24–25). With respect to Defendants' preemption argument, Bloosurf insists its state law claims in Counts II, III, IV, V, and VI are not preempted by the FCA because of the "savings clause" contained in 47 U.S.C. § 414 and pursuant to the United States Court of Appeals for the Fourth Circuit's holding in *Johnson v. American Towers, LLC*, 781 F.3d 693 (4th Cir. 2015). (ECF No. 26 at 25–26.) Plaintiff further argues against more traditional Defendants' 12(b)(6) arguments. (*Id.* at 27–37.) With respect to Count I, Bloosurf insists that 47 U.S.C. § 333 is

21

not barred by the election of remedies statute in 42 U.S.C. § 207 (*id.* at 27–29), and further that its § 333 claim is not time barred under the continuing wrong doctrine (*id.* at 29–31). With respect to its claims for tortious interference, Bloosurf insists that the context of T-Mobile's negotiations with the Schools and alleged spectrum interference show improper means. (*Id.* at 31–35.) With respect to its claim for negligence in Count V, Bloosurf describes the duty owed of care owed by Defendants as "common sense" and consistent with Maryland precedent, and further argues that "the statutory duties contained in the FCA expected of common carriers can serve as an additional basis for Bloosurf's negligence count." (*Id.* at 35–36.) With respect to Count VI, Bloosurf argues that Maryland law is clear that a property right—such as a defined property right to operate within a specific frequency band of wireless spectrum—can serve as a basis for a private nuisance claim. (*Id.* at 37.) Lastly, Plaintiff argues that whether its damages are warranted is irrelevant to the Rule 12(b)(6) analysis. (*Id.*)

As further explained below, Count I, which alleges that Defendants violated 47 U.S.C.§ 333, part of the Federal Communications Act, by willfully and wantonly interfering with Bloosurf's wireless network must be DISMISSED WITH PREJUDICE, as a private right of action has not been recognized under the Federal Communications Act. Moreover, Counts III, IV, V, and VI are premised entirely on Defendants' alleged spectrum interference. Because the FCC has "exclusive jurisdiction" over matters associated with interference, Plaintiff must bring those claims to the FCC. Accordingly, Counts I, III, IV, V, and VI are also DISMISSED. Further, because Plaintiff fails to allege conduct that is independently wrongful or unlawful, Bloosurf's claim for tortious interference with a business relationship relating to the Lease advanced against Defendants in Count II must be dismissed for failure to state a

claim.  Accordingly, Defendants' Motion to Dismiss for Lack of Jurisdiction and Failure to State a Claim (ECF No. 23) is GRANTED.

> ### A. Whether Bloosurf's Claim Under 47 U.S.C. § 333 Should Be Dismissed Because There Is No Private Right of Action Under That Provision.

This Court first addresses Count I, wherein Bloosurf alleges that Defendants violated 47 U.S.C.§ 333, part of the Federal Communications Act, by willfully and wantonly interfering with Bloosurf's wireless network.  (ECF No.29-2 ¶¶ 173–199.)  Through Defendants' Motion to Dismiss, Defendants question whether 47 U.S.C. § 333 provides for a private right of action. (ECF No. 23-1 at 30.)

Section 333 of the FCA provides that "No person shall willfully or maliciously interfere with or cause interference to any radio communications of any station licensed or authorized by or under this chapter or operated by the United States Government."  The Court agrees with Defendants that a private right of action has not been recognized under the FCA.  *See Parker v. Amazon.com.indc LLC*, No. 1:17-cv-04404-JMS-MJD, 2018 U.S. Dist. LEXIS 183582, at *21–22 (S.D. Ind. Oct. 26, 2018) (citing *Daly v. Columbia Broad. Sys., Inc.*, 309 F.2d 83, 85 (7th Cir. 1962) ("There is no provision in [§] 315(a), or in any other part of the Act, which gives a private individual a cause of action to recover damages for an alleged violation of the Act."); *Harrison-Halsted Cmty. Grp., Inc. v. Hous. and Home Fin. Agency*, 310 F.2d 99, 104 (7th Cir. 1962) ("Very recently, we held the [FCA], which contains no provision for a judicial review, barred the bringing of a private cause of action to recover damages for a violation of that Act."); *Lechtner v. Brownyard*, 679 F.2d 322, 327 (3d Cir. 1982) ("There is no explicit grant of a private cause of action in the [FCA].")); *see also Maydak v. Bonded Credit Co., Inc.*, 96 F.3d 1332,

1333 (9th Cir. 1996).  Accordingly, Count I is DISMISSED WITH PREJUDICE.

## B.  Whether the FCC Has Exclusive Jurisdiction Over Bloosurf's Claims.

Defendants first argue that this case must be dismissed, as the FCC has "exclusive jurisdiction" over the asserted claims.[11]  (ECF No. 23-1 at 21–24; *see also* ECF No. 28 at 9–12.)  Defendants emphasize that the gravamen of Plaintiff's lawsuit is Defendants' alleged interference with wireless spectrum, and assert that the FCC's jurisdiction over "technical matters associated with the transmission of radio signals" is "clearly exclusive."  (ECF No. 23-1 at 21 (citing *Broyde v. Gotham Tower*, 13 F.3d 994, 997 (6th Cir. 1994) (quoting *Head v. New Mexico Bd. of Examiners in Optometry*, 374 U.S. 424, 430 n.6 (1963))).)

According to Plaintiff, federal courts and the FCC enjoy concurrent jurisdiction over claims arising from violations of the Federal Communications Act pursuant to 47 U.S.C. § 207. (ECF No. 26 at 18–19.)  While Bloosurf concedes that part of this action involves T-Mobile's alleged spectrum interference, it contends that the case "will not require the Court to interpret the regulatory scheme put forth by the FCC or analyze factual matters outside the ordinary intelligence of [f]ederal judges or juries."  (*Id.* at 19.)  Plaintiff claims this case is distinguishable from *Broyde* and more akin to the cases of *Acumen Commc'ns, Inc. v. City of Covina*, No. CV 15-07335-SVW-PJW, 2017 U.S. Dist. LEXIS 25677 (C.D. Cal. Feb. 14, 2017) (finding that the plaintiff's bid-rigging allegations were distinguishable from the allegations in *Broyde*)[12] and

---

[11]  Elsewhere in their filings, Defendants raise a similar argument aimed exclusively at Bloosurf's state law claims concerning spectrum interference are preempted by the FCA.  (*See* ECF No. 23-1 at 26–29; *see also* ECF No. 28 at 14–16.)  Because the Court has dismissed with prejudice Count I, and because Defendants' argument that this Court lacks subject matter jurisdiction over claims involving spectrum interference is more appropriately construed as a preemption argument, the Court addresses the argument just once.

[12]  The Court finds it prudent to note that, after the plaintiff in *Acumen* amended its complaint, the court found that plaintiff's intentional tort claims were "premised on radio interference."  *Acumen Commc'ns., Inc. v. Motorola Sols., Inc.*, No. CV 17-04046-SVW-PJW, 2017 U.S. Dist. LEXIS 130960, at *4 (C.D. Cal. Aug. 11, 2017).

*Unigestion Holding, S.A. v. UPM Tech., Inc.*, No. 3:15-cv-185-SI, 2017 U.S. Dist. LEXIS 74289, at *16 n.5 (D. Or. May 16, 2017) (distinguishing *Broyde* as "inapposite" to case asserting claims[13] based on defendants' alleged fraudulent access to plaintiff's telecommunications network because *Broyde* "hinges, in part, on Congress's stated 'inten[t] to clarify the reservation of exclusive jurisdiction to the [FCC] over matter[s] involving [radio frequency interference").

The thrust of Defendants' argument is that this Court does not have subject matter jurisdiction to entertain tort causes of action based upon interference because the Federal Communications Act, which governs the regulation of wireless communications, preempts such claims. In section 151 of the FCA, Congress set forth its purposes and created the FCC, indicating that "there is created a commission to be known as the 'Federal Communications Commission' . . . which shall execute and enforce the provisions of this chapter." 47 USC § 151. The FCA provides that one of its "purpose[s] [is] . . . to maintain the control of the United States over all the channels of radio transmission; and provide the use of such channels . . . under licenses granted by Federal authority." 47 U.S.C. § 301. In section 303, the FCA explains that the FCC is responsible for "[a]ssign[ing] bands of frequencies . . . [and] [r]egulat[ing] the kind of apparatus to be used with respect to its external effects." 47 U.S.C. § 301(c), (e). Furthermore, the FCA states that "[n]o person shall willfully or maliciously interfere with or cause interference to any radio communications of any station licensed or

---

"But-for the radio interference, Plaintiff would not have lost any business and therefore would not have suffered any economic damages. Thus, these claims are more analogous to those found pre-empted in *Broyde* . . . than the bid-rigging allegations the Court previously distinguished from *Broyde*." *Id.*

[13] In *Unigestion*, the plaintiff asserted claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968, and for common law fraud, conversion, and unjust enrichment. 2017 U.S. Dist. LEXIS 74289, at *1, 4–7.

authorized by or under this chapter or operated by the United States Government." 47 USC § 333.

With the exception of Plaintiff's claim for tortious interference with a business relationship related to the EBS Lease Agreement advanced in Count II, Bloosurf's tort claims advanced in Count III, IV, V, and VI are entirely premised on T-Mobile's alleged interference with Plaintiff's wireless network. Simply stated, Counts III, IV, V, and VI are entirely contingent upon the alleged signal interference. With respect to Count III, which alleges tortious interference with contractual expectancy related to the Government Grants against T-Mobile, but-for T-Mobile's alleged spectrum interference with Bloosurf's wireless network, Plaintiff would not have "fail[ed] to meet its obligations under the [Government Grants]" and thus would not have suffered any economic damages. (ECF No. 29-2 ¶¶ 223–237.) Similarly, with respect to Count IV, which alleges tortious interference with contractual relations and economic expectancy related to Bloosurf's Customers against T-Mobile, but-for T-Mobile's alleged signal interference, Plaintiff would not have lost any business and therefore would not have suffered any economic damages. (*Id.* ¶¶ 238–252.) The same is true with respect to the negligence claim advanced against T-Mobile in Count V, (*id.* ¶¶ 253–268); as well as the private nuisance claim advanced against T-Mobile in Count VI, (*id.* ¶¶ 269–277).

Congressional preemptive intent is discernable in three alternate ways: (1) when it explicitly defines the extent to which its enactment preempts state law (express preemption); (2) when state law "regulates conduct in a field that Congress intended the Federal Government to occupy exclusively" (field or implied preemption)—as is the case here; and (3) when state law "actually conflicts with federal law" (conflict or ordinary preemption). *English*

26

*v. Gen. Elec. Co.*, 496 U.S. 72, 78–79 (1990).  As the Fourth Circuit explained in *Johnson v. American Towers, LLC*, 781 F.3d 693 (4th Cir. 2015), Congress has preempted state laws that regulate market entry as well as state laws that "obstruct or burden a wireless service provider's ability to provide a network of wireless service coverage."  *Id.* at 705 (quoting *Pinney v. Nokia, Inc.*, 402 F.3d 430, 456 (4th Cir. 2015)).  State law includes common law tort duties.  *Id.* (citing *Riegel v. Medtronic, Inc.*, 552 U.S. 312, 324 (2008)).  While Plaintiff notes that the FCA contains a savings clause, which states that "[n]othing in this chapter contained shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies," 47 USC § 414, it does not follow that § 414 demonstrates the absence of implied preemption by Congress.

In *Broyde*, the Sixth Circuit held that the FCC had exclusive jurisdiction over residents' nuisance claims that a radio station's signals interfered with the residents' household appliances.  *Broyde*, 13 F.3d at 996.  The court explained:

> Resolution of this matter, however, turns on a single issue: the existence of an irreconcilable conflict between the FCC's exercise of exclusive jurisdiction over the regulation of radio frequency interference and the imposition of common law standards in a damages action.  As the Supreme Court recognizes, the FCC's jurisdiction "over technical matters" associated with the transmission of radio signals "is clearly exclusive."

*Id.* at 997 (quoting *Head*, 374 U.S. at 430 n.6).  While Plaintiff resists this conclusion, Bloosurf's tort claims in Counts III, IV, V, and VI are analogous to those found preempted by the United States Court of Appeals for the Sixth Circuit in *Broyde*.  Accordingly, Counts III, IV, V, and VI are dismissed, as Bloosurf must bring its claims that exclusively hinge on spectrum interference to the FCC.

While Defendants urge this Court to find the same with respect to Count II, the Court is unpersuaded.  While Count II does allege that Defendants interfered with Bloosurf's spectrum, (ECF No. 29-2 ¶¶ 206–222), it also alleges much more.  Bloosurf alleges that Defendants tortiously interfered with a business relationship related to the EBS Lease Agreement by initiating negotiations with the Schools, by encouraging the Schools not to apply for the renewal of the EBS Licenses, by convincing the Schools to cancel the Lease, by drafting documents related to the Lease between Bloosurf and the Schools, by signing the Asset Purchase Agreement without first seeking Bloosurf's consent, and by conditioning any discussions on the alleged interference on Bloosurf's acquiescence to the lease transfer.  (*Id.*) In other words, Bloosurf's claim in Count II is not entirely premised on the alleged spectrum interference.  As such, the Court proceeds to address Defendants' Motion to Dismiss (ECF No. 23) as it relates to Count II.

## C. Whether the FCC Has Primary Jurisdiction Over Count II.

Defendants contend that this case should be dismissed under the doctrine of primary jurisdiction, which allows courts to stay or dismiss a party's claim when it implicates issues within the special competence of an administrative agency, because the FCC has primary jurisdiction over the highly technical spectrum interference issues at the core of this action. (ECF No. 23-1 at 24–26; *see also* ECF No. 28 at 12–14.)  Plaintiff, in turn, argues that primary jurisdiction is inapplicable to the instant litigation (*id.* at 22–24), but even if it were, referral to the FCC—not dismissal—is the proper remedy (*id.* at 24–25).

The doctrine of primary jurisdiction "is designed to coordinate administrative and judicial decision-making by taking advantage of agency expertise and referring issues of fact

not within the conventional experience of judges or cases which require the exercise of administrative discretion." *Env't. Tech. Council v. Sierra Club*, 98 F.3d 774, 789 (4th Cir. 1996). The doctrine of primary jurisdiction "requires the court to enable a 'referral' to the agency, staying further proceedings so as to give the parties reasonable opportunity to seek an administrative ruling." *Reiter v. Cooper*, 507 U.S. 258, 268 (1993). "Despite what the term primary jurisdiction may imply, it does not speak to the jurisdictional power of the federal courts. It simply structures the proceedings as a matter of judicial discretion, so as to engender an orderly and sensible coordination of the work of agencies and courts." *Env't. Tech. Council*, 98 F.3d at 789 n.24 (quotation omitted).

While there is no fixed formula for determining when the doctrine of primary jurisdiction applies, *id.* at 789, courts have generally focused on four factors including: (i) whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise; (ii) whether the question at issue is particularly within the agency's discretion; (iii) whether there exists a substantial danger of inconsistent rulings; and (iv) whether a prior application has been made to the agency. *Advamtel, LLC v. Sprint Commc'ns Co.*, 105 F. Supp. 2d 476, 480 (E.D. Va. 2000) (citations omitted).

In applying the four factor test, the Court is not persuaded that the primary jurisdiction doctrine applies to Count II. While Count II does allege spectrum interference—a matter over which the FCC has "exclusive jurisdiction"—spectrum interference is but a small part of Bloosurf's claim that the Defendants tortiously interfered with the EBS Lease Agreement.

The remaining (and abundant) allegations supporting Count II fall squarely within this Court's conventional experience and do not fall within the purview of the FCC.

> ### D. Whether Bloosurf Failed to State a Claim for Tortious Interference with a Business Relationship Related to the EBS Lease Agreement Against Defendants.

Through Count II, Bloosurf alleges that the Defendants tortiously interfered with a business relationship with respect to Plaintiff's EBS Lease Agreement with the Schools. (ECF No. 29-2 ¶¶ 206–222.) Under Maryland law, to succeed on a claim of tortious interference, the following elements must be shown: (1) intentional and willful acts; (2) calculated to cause damage to the plaintiffs in their lawful business; (3) done with the unlawful purpose to cause such damage and loss, without right or justifiable cause on the part of the defendants (which constitutes malice); and (4) actual damage and loss resulting. *Alexander & Alexander Inc. v. B. Dixon Evander & Assocs., Inc.*, 650 A.2d 260, 268–69 (Md. 1994). "[T]he two general types of tort actions for interference with business relationships are inducing the breach of an existing contract and, more broadly, maliciously or wrongfully interfering with economic relationships in the absence of a breach of contract." *S. Volkswagen, Inc. v. Centrix Fin., LLC*, 357 F. Supp. 2d 837, 851 (D. Md. 2005) (citation omitted). Through Bloosurf's amended pleading, Plaintiff alleges the former, whereas the original complaint seemingly alleged the latter type of tort action, as the Schools' alleged breach of the Lease occurred in August 2024. (*Compare* ECF No. 29-2 ¶¶ 206–222 *with* ECF No. 1 ¶¶ 179–194.)

Through their Motion to Dismiss, Defendants emphasize that for liability to attach, the interference must be "wrongful or unlawful." (ECF Nos. 23-1 at 32–35; 28 at 19.) As the Supreme Court of Maryland has explained, "an act of tortious interference with economic

relations is characterized by the defendant's specific purpose to interfere, and . . . acts which incidentally affect another's business relationship are not a sufficient basis for the tort.'" *Alexander & Alexander Inc.*, 650 A.2d at 270. According to Defendants, Bloosurf's allegations fail to meet that standard. (ECF Nos. 23-1 at 32–35; 28 at 19.) The Court agrees.

As the Maryland Supreme Court explained in *Alexander & Alexander Inc.*:

> "[W]rongful or malicious interference with economic relations is interference by conduct that is independently wrongful or unlawful, quite apart from its effect on the plaintiff's business relationships. Wrongful or unlawful acts include common law torts and "violence or intimidation, defamation, injurious falsehood or other fraud, violations of criminal law, and the institution or threat of groundless civil suits or criminal prosecutions in bad faith."

650 A.2d at 271 (citation omitted). In this case, and setting aside the spectrum interference allegations, the amended pleading fails to allege any facts about a wrongful act on the part of the Defendants that resulted in interference with Bloosurf's business relationship with the Schools. *See* ECF No. 29-2 ¶¶ 206–222.) While Plaintiff makes much of Defendants' alleged concealment of that interference and alleged influence over and acts in concert with the Schools, these allegations are not sufficient to show that Defendants engaged in a wrongful act to plausibly allege a tortious interference with business relationship claim. As such, the Court must also dismiss Count II.

## CONCLUSION

For the reasons stated above, Plaintiff Bloosurf, LLC's Motion for Leave to Amend Complaint (ECF No. 29) is GRANTED; and the Defendants' Motion to Dismiss for Lack of Jurisdiction and Failure to State a Claim (ECF No. 23), which the Court construes as if directed to the amended pleading, is GRANTED. Specifically, Count I is DISMISSED WITH PREJUDICE, and Counts II, III, IV, V, and VI are DISMISSED WITHOUT PREJUDICE.

Though amendment to Plaintiff's claims in tort premised exclusively on the alleged spectrum interference would be futile, Plaintiff can amend the complaint so far as Bloosurf can allege a proper legal cause of action to seek recovery.  Plaintiff has fourteen (14) days to file a further amended complaint.  If a further amended complaint is not filed by April 11, 2025, the Clerk of this Court is instructed to CLOSE this case with DISMISSAL WITH PREJUDICE.

A separate Order follows.

Dated: March 28, 2025                                    _____/s/_____

                                                        Richard D. Bennett
                                                        United States Senior District Judge